## Owen Motor Freight Lines et al. v. Russell's Adm'r (two cases).

## Same v. Sawyer's Adm'r.

(Decided June 21, 1935.)

796

EATON & BOYD for appellants.
WHEELER, WHEELER & SHELBOURNE for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

On the night of the 14th day of February, 1933, while en route from St. Louis, Mo., Denzel Russell, Ruth Meuren Russell, and Kenneth T. Sawyer were traveling in the cab of a truck operated by Sawyer, on highway No. 152, in Illinois. The truck in which they were traveling collided with the trucks of Obermark and the Owen Motor Freight Lines, causing the death of the three. Separate actions were filed in the McCracken circuit court by the administrator of their respective estates and were consolidated and tried as one. For this reason, we shall dispose of them in one opinion.

In their respective petitions, they pleaded the statute of Illinois and facts constituting their causes of action thereunder to recover damages of the Owen Motor Freight Lines and Charley Gaither, the driver of its truck at the time of the collision. A verdict in favor of their estates was returned for $5,000 each. From judgments thereon, these appeals are prosecuted.

For their defense, the Owen Motor Freight Lines and Gaither traversed the petitions and affirmatively alleged that Sawyer was operating the truck in which he and the Russells were traveling at the time of the collision "at a high and dangerous rate of speed"; that at that time "the highway was covered with snow and ice and the same was dangerous for fast traveling," and while the truck of the Owen Motor Freight Lines "was being operated in a careful, prudent manner," the "decedents negligently,. carelessly and unlawfully operated the truck in such a manner as to drive same into and upon the rear of a truck parked on the side of said highway, and by reason of the negligent, careless and reckless manner in which the decedents operated the said truck, they occasioned and brought about the collision between the Owen Motor Freight Lines truck and the truck parked on the side of the highway, thereby causing their own death," and no acts of the defendants, or either of them, caused or contributed to their deaths. We shall reproduce the evidence and discuss its relation to the issues made by the pleadings.

The evidence is that Obermark's truck was parked on the right-hand side of the center of the concrete highway, about 4 feet on the concrete, about 10 o'clock

at night, without lights, 1,300 feet from the brow of a hill to the point of the accident. The driver of the Owen Motor Freight Lines truck, when he was within about 60 feet of the rear of Obermark's truck, first discovered an object on the right-hand edge of the highway. Upon discovering it, he continued to operate his truck, steering it to the left of it. Upon reaching the side of the Obermark truck, he stopped or slowed down his truck and engaged in a conversation with two boys; one in the Obermark truck, and the other in the highway in front of it. He inquired of them if they needed any help, when one of them informed him that "Obermark had gone to town after help." At the moment of this conversation, one of the boys with Obermark truck who was in the highway in front of it, walked around to the side of the latter truck where he and Gaither for a moment engaged in talking, when the boy informed the occupant of the Obermark truck and also Gaither that there was a light of a motor vehicle coming over the hill, which the evidence discloses was about 1,300 feet from the point of the collision. This light turned out to be on the truck in which the decedents were traveling. On receiving this information, Gaither claims that while his truck had not entirely stopped, he began to operate it with a view of passing the Obermark truck while the truck in which the Russells and Sawyer were traveling was making the 1,300 feet to the point where it collided with Obermark's truck and the Owen Motor Freight Lines' truck.

The only thing urged by the Owen Motor Freight Lines and Gaither, as showing contributory negligence, is the speed at which the decedents' truck was traveling. Its speed alone is not necessarily sufficient to constitute contributory negligence on their part. In determining whether they were exercising due care for their own safety, the question of negligent speed is an element that may be taken into consideration with all the other surrounding facts and circumstances, and when so considered, may be found by the jury to be, or not to be, negligence. There is pleaded no statute of Illinois requiring a motor vehicle traveling in the rear of another to travel at any particular rate of speed.

In its absence, the universally recognized rules governing the operation of vehicles controlled the operation of the decedent's truck. We state them thus:

The driver of a motor vehicle is negligent if he operates at a rate of speed which renders him unable to stop within the range of his vision which is obscured by either fog, dust, or other cause (Bordelon v. T. L. James & Co. [La. App.] 148 So. 484) ; also, where one vehicle is trailing another, the trailing motorist must govern his speed or keep back a reasonably safe distance so as to provide for the contingency of the front vehicle suddenly stopping or decreasing his speed to avoid a collision, or can turn out safely to pass the vehicle in front (Rankin v. Nash-Texas Co. [Tex. Civ. App.] 73 S. W. [2d] 670; O'Rourke v. McConaughey [La. App.] 157 So. 598).

And "it is the duty of the driver of an automobile to maintain a speed sufficiently slow and to have such control of his car, that he can stop within the distance in which he can plainly see an obstruction or danger ahead." But these rules do not apply where a dangerous situation in which the driver of the automobile had no reason to expect another suddenly appearing immediately in front. "A person driving on a public highway * * * has a right to presume and to act upon the presumption that the way is safe for ordinary travel, even at night, and he is not required to be on the lookout for extraordinary dangers or obstructions to which his attention has not been called." Jacobs v. Jacobs, 141 La. 272, 74 So. 992, 993, L. R. A. 1917F, 253.

These generally accepted rules accorded the privilege to the decedents to travel any place on the highway and at any rate of speed they saw fit, until the Owen Motor Freight Lines and Obermark's truck suddenly appeared in front of the vehicle. They were not obligated by the doctrine of ordinary care to keep a lookout for an unlighted, invisible truck in the lane of their travel, as was the Obermark truck.

The statute of Illinois (Smith-Hurd Ann. St. Ill. c. 95½, sec. 17) on which the causes of action are predicated requires vehicles more than 80 inches wide and 25 feet long, "while being operated on the public highway," outside the corporate limits of cities [and] towns," "during the period one hour after sunset," to "display on the front thereof [in] a horizontal line near the top of the vehicle, approximately six inches apart. three green lights plainly visible at a distance of at least 200 feet; also on the rear thereof in a horizontal line

approximately six inches apart, three red lights plainly visible at a distance of at least 200 feet; * * * also on the rear of the body of said vehicle, not more than twelve inches from the lower left hand corner, one red reflector." And "during the period one hour after sunset" to "display on each side of the vehicle at approximately the one-third points of the length of the same, at a height not exceeding five feet above the surface of the road, and reflecting on a line approximately at right angles to the center line of the vehicle, two amber tinted reflectors of a type approved by the Secretary of State." It requires (Smith-Hurd Ann. St. Ill. c. 121, sec. 161b) vehicles on "paved or hard-surfaced roads having two traffic lanes" to be operated "to the right of the center line of the paved or hard-surfaced portion, and shall have the right of way on that traffic lane." "No driver of a vehicle shall stop the same on any durable hard surfaced State highway or allow it to stand in such position that there is not ample room for two vehicles to pass upon the road."

There is some evidence that the rear and side lights of the Owen Motor Freight Lines were not visible from the rear of its truck. Harold Beard, one of the boys with the Obermark truck, says:

"I saw the lights of the second car [the truck of the decedents] about a quarter of a mile away, when the Owen Lines came along and I called to Mr. Poole that a car was coming. I called to Mr. Poole that a car was coming and I started running. I told the Owen truck to go ahead before I started to run. I believe that the Russell truck was about 40 feet away when I heard him put the brakes on. * * * The truck hit just after I told this Owen truck to go ahead. We were throwing the spotlight sideways, not directly back."

Gaither stated:

"About the only lights the Russell truck could see, I believe, would be our tail lights and the test of the Obermark truck's stoplight. I do not remember seeing a tail light on the Obermark truck. I saw the rest of the stoplight on the pavement, not the reflector, when I was within about 50 or 60 feet of the Obermark truck."

It is apparent from the foregoing testimony that with the unlighted truck of Obermark on the highway,

and the Owen Motor Freight Lines' truck stopped for all practical purposes, on the left of the center of the highway, even if it was at the time lighted as required by the statute, supra, the collision was the proximate result of the presence in the highway of the two trucks.

In the language of the Court of Appeals of Ohio in Transcontinental Car Forwarding Co. v. Sladden, 49 Ohio App. 53, 195 N. E. 256, 258:

"The presence of said unlighted truck, in the position occupied by it, being an unexpected event which would not reasonably have been anticipated by an ordinarily careful and prudent person, we are of the opinion that the court ought not to determine as a matter of law that the negligence of plaintiff was a contributing proximate cause of the collision in question."

Considering the statements of Beard which are admitted by Gaither, that at the time he observed the lights of the truck of the decedents $\frac{1}{4}$ of a mile away, at which time he informed Poole and Gaither thereof, and suggested to Gaither to move on, then running away, it is apparent that if his truck was not, in reality, stopped at that time, there was nothing to hinder Gaither from acting on Beard's suggestion, and that had he done so, when the truck of the decedents first collided with the Obermark truck, the Owen Freight Lines' truck would have been so far in front of the latter, there would have been no collision of the former and the decedents' truck; also, from Gaither's statements as to what was said between him and the boys in, and at, the Obermark truck, together with the distance the decedents' truck had to travel when making the quarter of a mile, when its lights first appeared to them, it is equally apparent that the Owen Motor Freight Lines' truck was stopped on the highway, within the meaning of this term, as it is used in the Illinois statute. Witnesses were permitted to give the jury statements of Gaither made by him in their presence at the place of the accident.

Without determining the propriety or impropriety of the ruling of the court in this respect, there was, and is, other evidence authorizing the submission of the question whether the Owen Motor Freight Lines' truck had stopped on the highway immediately before, and at the time of, the collision. The facts essential to the re-

covery of the administrators under the Illinois law are not required to be proven by direct evidence of persons who saw the occurrence, but may be established by proof of circumstances giving rise to a reasonable inference to the truth of the facts alleged. U. S. Brewing Co. v. Stoltenberg, 211 Ill. 531, 71 N. E. 1081. The same rule prevails in this forum. Perry's Adm'x v. Inter-Southern Life Ins. Co., 248 Ky. 491, 58 S. W. (2d) 906; Louisville R. Co. v. Potter, 175 Ky. 258, 194 S. W. 308; Wald & Co.v. Louisville, Evansville & St. Louis R. Co., 92 Ky. 645, 18 S. W. 850, 13 Ky. Law Rep. 853; Jones Savage Lbr. Co. v. Thompson, 233 Ky.198, 25 S. W. (2d) 373. It seems to be a general rule in Illinois, in this forum, and elsewhere, that every person when in a motor vehicle on a public highway must exercise ordinary care for his own safety. It rests upon the fact that every one is responsible for his own failure to exercise ordinary care. Neither negligence nor contributory negligence will ever be presumed; a plaintiff relying upon negligence as the basis for his recovery must prove it, and in this jurisdiction a defendant pleading contributory negligence assumes the burden of proving it. Cox's Adm'r v. C., N. & O. T. P. R. Co., 238 Ky. 312, 37 S. W. (2d) 859. Though injuries may result from the negligence of a defendant, or of a person for which he is responsible, no recovery can be had therefor, if the plaintiff's own negligence contributed to his own injuries or death.

The prevailing rule in Illinois seems to be that it was necessary for the administrator of each of the decedents, as a part of his cause of action and right of recovery, to allege and prove that at the time his decedent came to his death, he was exercising due care and caution for his own safety, and that the decedents were not negligent in failing to observe such care. See Chicago & Eastern Ill. R. Co.v. Beaver, 199 Ill. 34, 65 N. E. 144; U. S. Brewing Co. v. Stoltenberg, 211 Ill. 531, 71 N. E. 1081; Johnson v. Pendergast, 308 Ill. 255, 139 N. E. 407. The court, in Grifenhan v. Chicago Rys. Co., 299 Ill. 590, 132 N. E. 790, declared it was the duty of a passenger in an automobile to learn of, and avoid, danger of being struck by another; and if a guest, it is his duty in the exercise of ordinary care for his own safety to warn the driver, but the driver's negligence cannot be imputed to the guest. Swanlund v. Rockford & I. R. Co., 305 Ill. 339, 137 N. E. 206; Archer v. Bourne,

222 Ky. 268, 300 S. W. 704; Stephenson's Adm'x v. Sharp's Ex'rs, 222 Ky. 496, 1 S. W. (2d) 957. The rule in Illinois is that the question of contributory negligence is ordinarily one for the jury, unless there is a failure of proof to show due care on the part of a decedent in cases of this character, or the evidence of contributory negligence is so conclusive as to require the court to set aside a verdict in opposition to it.

The truck in which the Russells and Sawyer were traveling and another operated by W. T. East left St. Louis about the same hour and traveled before the accident, highway No. 152, a distance of 60 to 70 miles. At the time the decedents' truck passed over the top of the hill, 1,300 feet from the place of the accident, the East truck was traveling at the rate of 15 or 20 miles an hour in the rear. From the time the Russell's truck passed over the hill, he saw it no more, but heard the crash of the collision. While the decedents' truck was making the distance from the top of the hill to the place of the accident, the East truck was traveling at the rate of 15 to 20 miles an hour from the point at which it was at the time the decedents' truck passed over the top of the hill. He testified thus:

> "I heard a crash, I seen that something had happened in front of me. I applied my brakes and the front part of the truck swerved around. * * * Then I discovered there was ice on the highway and I reached over and shut off my motor. * * * But I could not stop and I touched my brakes again and saw that if anything, my truck would speed up. I applied my brakes and then seemed to go faster; the brakes were good and the truck loaded. I stopped within about 20 feet of the accident."

He stated that the last time he saw the decedents' truck it was traveling 15 or 20 miles an hour and from the moment he heard the crash it was but about a minute until he approached the scene of the accident where the trucks were wrecked. He says from the time he heard the crash, he kept a lookout ahead for taillights and trucks. It was foggy, raining, and freezing. The highway was frozen, covered with ice, and slippery. He could see ahead as he approached the trucks about 150 feet. The decedents' truck hit the left rear of the Obermark truck and the right of the Owen Motor Freight Lines' truck and passed between them. Gaither

testified that about 15 miles from the place of the accident he examined the lights on his truck and trailer. At that place it had three red lights on the top of the truck, a clearance light on the left edge of the trailer, and a tail or stoplight; in all, five lights on the rear end of the truck. After the accident, there were no lights on the rear of his truck. He claims that the collision disconnected the wiring of the truck and trailer and thus cut off the lights. The weight of the truck he was operating with its load was around 14,000 or 15,000 pounds; that of Obermark was 10,000. The Obermark truck was 7½ feet wide, 12 feet long; the Owen Motor Freight Lines' truck was 7½ or 8 feet wide, composed of a tractor and trailer, about 30 to 35 feet in length.

No witness testified the rate of speed of the decedents' truck from the moment it reached the top of the hill, 1,300 feet from the scene of the accident, until the brakes were put on it, about 40 feet from the Obermark truck. The skid marks on the highway showed it skidded 20 feet. According to the testimony of East, because of weather conditions, if the lights were on the trucks involved in the accident, they could not have been seen over 150 feet.

It is, therefore, apparent that whatever the rate of speed the decedents' truck was traveling, and whatever lights with which the Owen Motor Freight Lines' truck was equipped, it was not possible for them, on account of the weather conditions, to do more, or discover any sooner the presence of the Obermark and the Owen Motor Freight Lines' truck in the highway, than it was possible for East or Gaither to do. With the Owen Motor Freight Lines' truck and the Obermark truck side by side in the highway, they completely blocked it, and necessarily prevented the decedents' truck from turning to the left to avert colliding with the Obermark truck.

It can safely be said there is neither verbal nor circumstantial evidence tending to show that the rate of speed at which the truck in which the decedents were traveling or other or any conduct on their part in any manner or to any extent contributed to the loss of their lives. The rule in such case is that where there is no evidence, direct or circumstantial, of conduct of the injured party, indicative of his negligence, there is in death cases a presumption of due care on his part. Faber v. Herdliska (Minn.) 260 N. W. 500.

Also, the presumption is always that no one will voluntarily do or fail to do an act that places his own life in peril; but that he took ordinary precautions for his own safety. Green v. Texas & Pac. Ry. Co. (Tex. Com. App.) 81 S. W. (2d) 669. The decedents' estates are entitled to invoke these general principles, whether the burden of proof was upon them to exculpate their decedents of contributory negligence or upon the defendants.

Granting that the law of Illinois controls this case as to the competency and sufficiency of the evidence, and that thereunder the burden of proof was on the decedents to show they exercised ordinary care for their own safety, it is not doubtful that the proven facts and circumstances demonstrate that there was no failure on their part to exercise ordinary care for their own safety, or, at least, made it a question for the jury. Even if the lights on the Owen Motor Freight Lines were of the character required by the Illinois statute and were operating at the time the decedents' truck was making the distance from the top of the hill to the point of the collision, the lane on the right of the center of the highway in the absence of lights on the Obermark truck was clear, thus inducing the decedents to go forward and, also, gave their truck the right of way over that lane. And on discovering the presence of the Obermark truck when within 40 feet of it, except for the presence of the Owen Motor Freight Lines' truck being on the right side, their truck would have had free passage to the left of the Obermark truck, on that portion of the highway occupied by the former, or space in which to turn to the left of the center of the highway.

The initial negligence of the Obermark truck did not exonerate the Owen Motor Freight Lines of the negligence of Gaither knowingly causing it to remain to the left of the center of the highway, while the decedents' truck was making the distance from the top of the hill to the scene of the accident, whether during the lapse of time Gaither had come to a full stop or was in slow motion. Thus it is shown that the concurrent negligence of Obermark and the Owen Freight Lines' truck was the proximate cause of the death of the decedents. It is no defense to the Owen Motor Freight Lines and Gaither that Obermark's truck was negligently parked on the highway without lights, since the facts and circum-

stances plainly establish that the decedents were exercising ordinary care for their own safety, sufficiently to fulfill the requirements of the controlling rule adopted in such case by the courts of Illinois.

Mr. Cooley on Torts, page 782, says:

"If the damage has resulted from the concurrent, wrongful acts, or the negligence of two persons, each of these actions may be relied on as the wrongful act, and the parties held responsible therefor, jointly or severally, for the injuries."

Another co-ordinate rule is, if the party, himself, involved in an emergency is not guilty of negligence in creating the emergency in which he is placed in danger, he is entitled to do that which in the emergency seems best for him to do to save himself from danger, and that if he chooses the wrong course, and by reason thereof sustains an injury, he should not be held liable because he chose the wrong course. Louisville Taxicab & Transfer Co. v. Reno, 237 Ky. 452, 35 S. W. (2d) 902; Wood v. Cumberland T. & T. Co., 151 Ky. 77, 151 S. W. 29. The emergency with which the decedents were confronted was created by the concurrent negligence of the Owen Motor Freight Lines, Gaither, and Obermark, without fault of the decedents.

The administrators argue:

"If the law of the forum makes it a condition of maintaining the action, that the party bringing an action show himself free from fault, that condition must be fulfilled, though there was no such requirement in the state where the cause of action arose"; but, "if the state of the forum requires that an appellant suing to recover for a negligent injury, show himself to have been free from negligence on the occasion of the injury, this condition must be fulfilled."

Since we have determined that the evidence was sufficient to authorize the submission of the case to the jury, and to sustain its verdict, under the rules of practice in operation in Illinois, governing such action, it is entirely unnecessary to determine whether the law of the forum should control the question of pleadings and the burden of proof. The administrators argue that the Owen Motor Freight Lines and Gaither pleaded special facts constituting contributory negligence; therefore, the

court should have confined by the instruction on the subject, their right to rely upon the contributory negligence to the facts pleaded. This question becomes immaterial, since it is our conclusion that applying the Illinois rule, it is sufficiently established that the decedents exercised ordinary care and were free from fault at the time of the accident in which they lost their lives.

The Owen Motor Freight Lines and Gaither complain of the admission of certain questions propounded to, and answered by, East. When the objectionable questions and answers are read in the light of the whole of his testimony, they are not entitled to the prominence given them by the criticism thereof. If it be conceded that the questions or the answers were improper and the court erred in not sustaining the objections thereto, the admissions of his answers are not sufficiently material to justify or warrant a reversal.

A hypothetical question was propounded to, and answered by, Lewis Tyler. It is very plain that the question and answer were improper, but it is so plain that its effect was nonprejudicial, we do not deem the erroneous ruling thereon sufficient to warrant a reversal. The facts and circumstances proven by Gaither, Poole, and Beard and East so clearly and convincingly establish the negligence of the Owen Motor Freight Lines and Gaither, and so completely exonerate the decedents of a failure to exercise ordinary care for their own safety, the question to, and answer of, Tyler are entirely immaterial. The ruling thereon does not authorize us to disturb the verdict of the jury. The offered instructions are substantially the same instructions in the three cases. They concede in their brief that instructions O, P, Q, and R, in so far as they go, properly gave the law of the case, but contend that the court erred in refusing to give instruction 14 which they offered. It is said in their brief that instruction No. 1 goes minutely into the duties of the driver of the Owen Motor Freight Lines' truck, and, therefore, "clearly, if an instruction like this was to be given as to the duties of the driver of the Owen truck, the appellants had a right to have minute and detailed duties of the driver of the Russell truck set out in an instruction." It is also stated in the brief that instruction No. 1 given at the request of the administrators is more binding on the driver of the Owen truck than the given instruction as to the duties of the driver of the Russell truck. At their request, the court gave instruc-

tions D, E, and F. These instructions are in the language chosen by the Owen Motor Freight Lines and Gaither. They directed the jury that it must find from the evidence before the administrators could recover; also, that if the driver of the Russell and Sawyer truck omitted to do anything for their safety, or if they could have done anything "by the exercise of ordinary care, caution, prudence and diligence, that could and would have supplied the omission and thereby have prevented the collision, and failed to do, to find for the defendants. An instruction informed the jury of the duty of a guest to warn the driver "against driving at excessive speed"; "against any careless driving considering the condition of the highway and the darkness of the night"; and to warn him "of any acts of carelessness or negligence," and if the guests fail to do so, to find for the defendants. Instruction G emphasized the directions given to the jury by D and E, by informing the jury that if it believed from the evidence that the decedents fail to do any one or more of the things mentioned in those instructions, "then the failure on his part so to do was negligence and to find for the defendants." Instruction 14 endeavors to define the duties of Sawyer relative to the speed of the truck, his duty to keep a lookout, and if he operated it at an unreasonable rate of speed or failed to keep a lookout, to find for them. Instructions D and E directed the jury that if it believed the decedents were guilty of an act or conduct contributing to the death of himself or herself, to find for them. The speeding of the truck and the duty to keep a lookout were covered by the general language found in instructions D and E. It was entirely unnecessary to give instruction 14 after having given, at their request, D and E. However, the court gave instruction 5 relative to the speed of the truck and directed the jury that if it believed from the evidence that the speed of the truck contributed to the death of the decedents and that their deaths would not have occurred, except for the operation of the truck in which they were riding at an unreasonable rate of speed, to find for the defendants. This is substantially the instructions prepared by this court and directed to be given in Utilities Appliance Co. v. Toon's Adm'r, 241 Ky. 823, 45 S. W. (2d) 478. The instructions offered by the parties and given by the court, other than No. 5, appear to have been written to conform to the law of Illinois in such case, and when.

they and No. 5 are read together, they fairly and properly present the law of the case, according to the rules of practice of the courts of that state.

The instructions offered and given are not made a part of this record, either by an order of court or the bill of exceptions, and under the accepted rules of practice we are without right to consider them. However, we have reviewed them in the light of the evidence, as though they were properly made a part of the record, notwithstanding it was not incumbent upon us to do so. On the whole record, a fair and impartial trial has been accorded the Owen Motor Freight Lines and Gaither.

Wherefore, the judgments are affirmed.