## Vinson v. Kissinger's Adm'r.

(Decided  May 10, 1938.)

ROBERT B. REED and ADRIAN H. TERRELL for appellant
PENTECOST & DORSEY and OTTO C. MARTIN for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

On the 7th day of May, 1937, C. P. Kissinger, administrator of the estate of Hattie B. Kissinger, deceased, was awarded a judgment against W. A. Vinson in the sum of $8,900, growing out of a collision of a car in which Hattie B. Kissinger was riding with one that

W. A. Vinson was operating. From that judgment Vinson appeals.

Counsel for appellant contend: (1) That the instructions given to the jury by the court over their objection were erroneous and prejudicial to the rights of appellant; (2) that the verdict was excessive when based upon the facts heard upon the trial. Since the court has reached the conclusion that the instructions in part were erroneous and prejudicial to the rights of appellant, it will be unnecessary to consider the alleged error of the excessiveness of the verdict. That question is not considered, but especially reserved. There are other errors complained of, one of which is that the verdict seemed to be the result of passion and prejudice of the jury brought about in part by improper argument of counsel for appellee. Such alleged error may not occur again on another trial. Therefore, we will pass it up.

In order that we may clearly and properly consider the particular erroneous instruction, it is necessary to state the salient facts on which the cause of action was based. On the 20th day of May, 1936, the deceased, Hattie B. Kissinger, was riding in a car operated by her son-in-law, H. L. Morton. In the same car were her daughters, Mrs. H. L. Morton and Miss Pauline Kissinger. They were riding on the front seat with H. L. Morton, the operator of the car, Hattie B. Kissinger on a feather bed in the rear seat. She had been sick for some months; was afflicted with a number of ailments, such as neuritis, a "nerve trouble," gastritis, a stomach trouble, colitis, and possibly some trouble with her bladder. It is not clear from the evidence whether she was sitting or lying upon the feather bed. In any event, she was using it for her comfort. Her son-in-law came to her home in his car, in part for the purpose of conveying her from Fordsville, Ohio county, her home, to the city of Paducah, where Mr. and Mrs. Morton resided. They were traveling upon what is known as public highway No. 60. They were nearing a bridge that crosses Green river, near the village of Pottsville, where the alleged injury was charged to have been inflicted. Following or trailing this car was appellant, Vinson, who was operating a ½-ton truck, the property of the mining department of Kentucky. The truck had been following the car for a half mile or more along a straight concrete highway. It was about 3

o'clock in the afternoon, the sun was shining brightly. The car and the truck were running at the rate of about 35 miles per hour. Just before reaching the bridge, H. L. Morton suddenly slowed down his car apparently for the purpose of stopping it. In doing so, he gave no warning of his intention with his arm and hand, as required by the statute and rules of the highway. The truck was within about 20 to 30 feet in the rear of the car, when Morton began to slow up his car for the purpose of stopping. Morton stated that he slowed down because just in front of him the road was "bumpy" on account of some repairs that had been made in the highway. However, Morton did not state, nor did any witness for appellee state, that any notice or warning was given the approaching truck, of his intention to slow down or stop his car. He does state, however, that in the rear part of his car, on the end of each fender, was an electric appliance, and, when he threw on his brakes, there were red lights on which the word "stop" would show. On the other hand, Vinson, the operator of the truck, stated that the road was straight and they had been riding along about that distance for a half mile or more; that he had his truck all the time under full control; that both vehicles were moving at about 35 miles per hour—the same rate of speed—that without warning of any kind Morton suddenly and abruptly slowed down and stopped his car practically just in front of him; that he threw on his brakes and made every effort he could to prevent striking it, but the stopping was so sudden that he was unable to pass the car of Morton without striking it slightly on the rear bumper, doing some small damage; that no one to his knowledge was injured by the impact. However, Morton stated that his car was struck with such force in the back part that an impression was made as if a baseball had struck it. It is in proof by one of the daughters that Hattie B. Kissinger, soon after the car was struck, appeared in distress and soon thereafter began to complain of her back being injured; that she had never complained of that before; that she had practically recovered from the other ailments. Several doctors who had been treating her stated that the injury of the back was not made manifest until after the impact of the truck with Morton's car. In any event, in a short while, she died.

It is insisted by counsel for appellant that the evi-

·dence was not sufficient to show that her death was caused from the truck colliding with the car. That question is reserved and not passed upon. The pivotal point is, Did the court err in the instructions? The instruction complained of by counsel for appellant is a certain part of instruction No. 1. That we may consider that part that is contended to be erroneous, we deem it necessary to embody the entire instruction:

"It was the duty of the defendant, W. A. Vinson, at the time and place mentioned in the evidence, to drive his truck in a careful and prudent manner, with due regard for the safety and convenience of other traffic and persons on the highway at such time and place, to exercise ordinary care to avoid striking other cars or persons thereon and, in following the car in which the plaintiff's decedent was riding, to have his car under such reasonable control as to enable him, by the exercise of ordinary care, to avoid coming into collision with same in case it should unexpectedly slow down.

"And if you shall believe from the evidence that the defendant failed to observe the said duties, or any of them, and that, as a direct and proximate result of such failure, if any, the defendant's truck was caused to and did collide with the car in which plaintiff's decedent was riding, thereby injuring her physically and from which physical injuries she subsequently died as a direct and proximate result thereof, you should find your verdict for the plaintiff and award to him damages as hereinafter set out."

Counsel make no complaint of that part of the instruction wherein the jury was told that it was the duty of the defendant to drive his truck in a careful and prudent manner with due regard for the safety and convenience of the traffic and persons on the highway at such time and place and to exercise ordinary care to avoid striking other cars and persons thereon; but, on the other hand, practically admit that so far the instruction correctly presented the duties on the part of the defendant, Vinson. However, counsel with much emphasis object to that part of the instruction that told the jury that it was the duty of the defendant to anticipate that the car driving ahead of him might unexpectedly slow down at any time. That part of the instruc-

tion counsel insist, being the use of the phrase to avoid coming into collision with same in case unexpectedly it should be slowed down, was equivalent to making the defendant an insurer against any injury that the occupants in the car might receive, and was calculated to and did convey the idea to the jury that there was no duty imposed upon Morton, the operator of the car in which his mother-in-law was riding, to give any signal whatever of his intention of slowing down or stopping his car at the time, and, therefore, he had the right to slow down at any time without giving any warning of his intention to do so; that, regardless of Morton's negligence, the defendant, himself, should anticipate such an unexpected emergency whether warned of the intention of Morton or not. We think there is merit in that contention. The operator of the car in which Hattie B. Kissinger was riding had certain duties to perform under the law in traveling upon the highway. The same duties devolved upon him to give the statutory warning of his intention to slow down or stop his car, as that of Vinson who was following him upon the same highway, to use ordinary care to avoid striking his car.

The law of the highway imposes a duty upon the operator of a motor car to give notice as provided by section 2739g-50, Kentucky Statutes. There is no evidence that the warning prescribed by the statute was given by the operator of the Morton car. This warning should always be given that the purpose of the operator of the car may be known when there is an intention to abruptly and suddenly check his car or stop it. This warning must be given by the use of the operator's arm and hand or by an electrical or mechanical device approved by the commission. There is no proof that there was upon this car a mechanical device. The fact that the car had lights in the rear that were being operated by Morton is not a mechanical device as contemplated by the statute, any more than the electrical horn that is on every car.

In the case of Marsee et al. v. Bates, 235 Ky. 60, 29 S. W. (2d) 632, we said (page 634):

"Under the statute the signal may be given either by the hand and arm or by the electrical or mechanical device. Both are not required by the statute. The electrical or mechanical device is a

mechanical substitute for the hand, many of which are in common use on cars. It has no reference to the blowing of the horn.''

Subsection 2 of the above section of the statute, supra, provides:

''Intention to stop a vehicle or to abruptly or suddenly check its speed shall be indicated by extending the hand and arm out from and beyond either side of the vehicle in a downward direction at an angle of forty-five degrees or greater from the horizontal.''

There is no proof that the warning provided by that subsection was given. However, it is in proof that on each rear fender of the Morton car was an electrical appliance that when the operator of the car pressed the brake, a red light at once showed. Close to the red light was written the word ''stop.'' The proof shows that these lights were in working order.

Appellant in his evidence stated that he did not see the red light if it were put in operation; that the rear part of the Morton car was covered in mud. This fact was denied by Morton. In any event, if such red lights were on the rear of the car, and the word ''stop'' also was thereon, this did not authorize the operator of the Morton car to fail to do his duty in giving the statutory warning denoting his purpose to slow down or stop his car. The proof shows there was no other vehicle in front of the Morton car or any reason given for his slowing up, except that he saw a bump in the highway. It is not shown how much of the highway the bump covered. At that place the highway was straight and had been straight for a half a mile or more. The two vehicles had been running the same speed of about 35 miles per hour. They were meeting no vehicles; there were no side roads from which travelers might be expected to enter the highway on which Morton and Vinson were traveling. There was nothing before them that would give notice to Vinson that there was any reason for Morton to stop his car. The way was clear. There is no complaint of the rate of speed of either vehicle. There was nothing to induce Vinson, the operator of the trailing truck, to reach a conclusion that the Morton car would suddenly or abruptly slow down. He had the right to rely upon Morton giving the statutory warning if for any cause he wished to slow down

his car. From the rate they were traveling, it was reasonable for Vinson to believe that, before doing so, Morton would give the customary and statutory warning of his intention. We think it was error for the court to instruct the jury as set out in instruction No. 1. That was in effect telling the jury that, although both vehicles were running on the highway at the same rate of speed, one behind the other from 20 to 30 feet apart, still, regardless of the negligence of the operator of the car in front, of his failure and utter disregard of his duty in complying with the statute, it was still the duty of Vinson to contemplate as well as anticipate an unexpected slow-down on the part of the operator of the Morton car. That part of the instruction was bound to be error and prejudicial. This instruction necessarily made instruction No. 2 prejudicial, which is as follows:

"If you shall believe from the evidence that the defendant was observing the duties imposed upon him by the first instruction, and shall further believe from the evidence that the car in which plaintiff's decedent was riding suddenly and unexpectedly slowed down or stopped on the highway without warning that it was about to do so, and that the defendant could not, by the exercise of ordinary care, avoid coming into collision with same, and that the sudden slowing down or stopping of said car was the sole cause of the said decedent's injuries, if she received any injuries, then the law is for the defendant and you should so find."

The effect of the two instructions when read together, brings the jury to the narrow point as suggested in brief of counsel for appellant:

"* * * if the jury found that the sudden and unexpected slowing down of the car in which the decedent was riding, without warning to the defendant that it was about to do so was the sole cause of the decedent's injuries, then the law was for the defendant."

Counsel for appellee in their excellent briefs insist that the complained of instructions present fairly the law based upon the facts of this case. Among the cases cited by counsel is Wright v. Clausen, 253 Ky. 498, 69 S. W. (2d) 1062, 104 A. L. R. 480, a part of which reads as follows (page 1064):

"When, by section 2739g-50, Kentucky Statutes, there was imposed upon the operator of a motor vehicle certain duties relative to turning, stopping, or changing the course of such vehicle, and giving signals therefor, then there fell upon the operators of trailing and on-coming vehicles the duty to watch for and observe signals of intention to turn, stop, or change of course, * * * and the operators of trailing or on-coming vehicles must observe and give regard to signals, so given, and must use ordinary care to keep their trailing or on-coming vehicles under such control as to avoid coming into collision with the vehicle from which the signals were given."

We still adhere to that construction of section 2739g-50. The error in instruction No. 1 in our opinion, is mainly because the duty imposed upon the operator of the Morton car relative to stopping, slowing down, and giving warnings was overlooked. Counsel for appellee especially relies upon the case of Owen Motor Freight Lines et al. v. Russell's Adm'r, Owen v. Sawvers' Adm'r, 260 Ky. 795, 86 S. W. (2d) 708, and as a foundation for their argument they quote from that opinion the following (page 711):

"Where one vehicle is trailing another, the trailing motorist must govern his speed to keep back a reasonably safe distance so as to provide for the contingency of the front vehicle suddenly stopping or decreasing his speed, so he can stop or decrease his speed to avoid a collision, or can turn out safely to pass the vehicle in front."

The above quotation is taken entirely and was based upon the facts in the case of Rankin v. Nash-Texas Company, Tex. Civ. App., 73 S. W. (2d) 680. The facts on which that quotation was founded are not similar in any respect to the facts here.

In the instant case the question of speed is not an issue. There is no issue that Vinson failed to keep a proper lookout. The distance of the Vinson truck from the Morton car is not in question. Had Morton complied with the statutory warning by placing his arm and hand at right angles, as the law directs, it being during the day when the sun was shining and everything could be plainly seen, when each party was running on the right side of the highway, there being no obstruction

to either vehicle in front of their movement, both running at the same speed, then it would be reasonable that the trailing truck on observing the warning of the leading car, should it have been given at the proper time and for a reasonable distance before reaching the impediment in the road, then each vehicle running at the same rate, would and could have slowed up in the same proportion and the collision, no doubt, could have been avoided. The rule in the Owen Motor Freight Lines Case, supra, does not and should not apply to the facts in the instant case.

Having reached the conclusion that the part of instruction No. 1 complained of by counsel for appellant was error and prejudicial to the rights of appellant, the judgment is reversed with further proceedings consistent herewith.

Whole court sitting, except Judge Clay.