## Peden's Adm'r v. Reynolds.

Oct. 3, 1941.

642

Terry L. Hatchett for appellant.

John E. Richardson and Richardson & Redford for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Ray Peden, at the time about eighteen years of age, met death in a collision between the automobile which he was driving and a truck on Highway No. 31-W, a short distance from Cave City. The accident occurred in October, 1939.

The father, as administrator instituted suit asserting that while decedent was driving his car on the highway, Reynolds "operated his vehicle with such gross carelessness and negligence as to force decedent from the highway and to cause it to collide with a truck of one Geralds." Reynolds plead contributory negligence. At close of appellant's proof the court sustained his motion for a directed verdict and judgment was entered accordingly, and on appeal it is contended that the proof was sufficient to carry the issue to the jury.

On the day of the accident deceased had been to school in Cave City, driving his father's car. After school he remained at the building, leaving at dusk for his home about three miles south of Cave City. The two persons in the truck, Geralds and Tony, his son, were the only eye witnesses.

Tony testified that the collision occurred about three-fourths of a mile from Cave City near "Seminary" road, which turns east from the highway. He was on his side of the highway going north, at a rate of 30 or 35 miles per hour. He said: "These two other cars were coming south meeting me." Speaking of the

Reynolds' car, he said: "Just before I got to this road where he turned off," (Seminary road) "he stopped, and didn't give this boy any signal, and the other boy was coming so close to him, before he hit me, he dodged. Peden pulled right across my side of the road and hit me." His judgment was that when the Peden car pulled around, it was "somewhere around 30 feet in the rear of the Reynolds' car," both on their sides of the road.

Tony first saw the Reynolds' car when 75 or 100 yards away, and at this time did not see the Peden car. On cross-examination he said that the Reynolds' car slowed down before stopping, at a point of the "road going in there"; that when the Reynolds' car stopped, it was "between me and him," but that he had seen the Peden car 50 to 75 yards back of the Reynolds' car, and at that time Reynolds' car "was stopped down there in the road." As to the signal he said he "did not see Reynolds give any signal." Tony judged that Peden was driving at 40 or 50 miles per hour, "and did not slow down that I could tell."

The father testified substantially as had the son. He was positive that when the Reynolds' car slowed down and stopped, on his side of the road, the Peden car was 50 or 75 yards behind it. "He ran up to him and had to run over him or over us. He wheeled around to keep off of the Reynolds' car and hit us." On cross-examination Mr. Geralds said that when he first saw the Reynolds' car, his truck was about 50 to 75 yards distant, and at this time he did not see the Peden car, but did see it when Reynolds began to slow down and made the stop. He estimated the speed of the Peden car at about 45 to 50 miles per hour, with no slowing down before the impact. The road was practically level and about 18 feet wide, and at the point near where the accident occurred one could see quite a distance in either direction, perhaps further as you travel south. On cross-examination it was brought out that "after Mr. Reynolds stopped, slowed down his automobile, you looked up and saw the Peden boy coming at 45 or 50 miles an hour, back of Mr. Reynolds' car."

Carroll Stiltz, a schoolmate of Peden, was walking northwardly on the highway. He met the Reynolds and Peden cars a short distance north of the Seminary road. At that time Reynolds was driving about 20 or 25 miles

per hour; Peden's car going about 35 miles and he heard the noise from the impact shortly thereafter. He says when he saw the two cars, the Peden car was about 300 feet in the rear of the Reynolds' car. He, and other witnesses, described the position of the cars after the accident. The Peden car was turned completely around; the truck was knocked to the extreme right of the road; the Reynolds' car standing on its side of the road. There was introduced by plaintiff a sketch showing the position of the cars in the highway just after the collision. This shows that the truck had just passed this road when the collision occurred.

Upon the facts, substantially and fairly stated, appellant contends that negligence on the part of appellee is so sufficiently shown as to have carried the case to the jury. On the contrary appellee contends that the injury was due solely to Peden's negligence.

Counsel contends first, that Reynolds violated the provisions of Section 2739g-48, Kentucky Statutes, because he stopped his automobile on the highway, but this alleged act of negligence is not stressed to any extent. This section relates to the duty required of the operator, discharging or taking on passengers or for repairs.

It is apparent from the sketch (introduced by plaintiff) that at the time Reynolds stopped his car it was on the extreme right side of the highway, a position apparently necessary for him to make his proposed turn. Counsel contends that where the evidence on which contributory negligence is based is conflicting then it is the duty of the trial court to submit to the jury all the evidence. Citing Tyler Company v. Curd, 240 Ky. 253, 42 S. W. (2d) 298; Hogge v. Anchor Motor Freight of Delaware, 277 Ky. 460, 126 S. W. (2d) 877, and others, which reflect the correct rule as applied to the facts in each case and which differ from the facts here adduced. We said in the Hogge case that it was not manifested upon what ground the court withdrew the case from the consideration of the jury, but here it is not difficult to perceive that the court sustained the motion upon the ground that the proximate cause of the injury to decedent was his contributory negligence; not merely a presumption of such, but a showing by appellant's proof that decedent caused the collision of his car with the truck.

It is evident from reading appellant's brief that he places the greatest reliance to show negligence in the failure of Reynolds to give the signal required by Section 2739g-50, Kentucky Statutes, of his intention to stop or to make the turn into Seminary road.

We need not go at length into a discussion of the modification of the rule relating to the duty of the driver of a trailing car, as laid down in Owen Motor Freight Lines v. Russell's Adm'r, 260 Ky. 795, 86 S. W. (2d) 708, or whether the rule therein has been since abandoned by later opinions, Vinson v. Kissinger's Adm'r, 274 Ky. 606, 119 S. W. (2d) 628; Fahrenholtz v. Loomis, 280 Ky. 9, 132 S. W. (2d) 307, 308, since the facts here differ from those in the cases cited, but came nearer to the facts shown in Whitney v. Penick, 281 Ky. 474, 136 S. W. (2d) 570, and Wright v. Clausen, 263 Ky. 298, 92 S. W. (2d) 93.

That there was no trailing in the sense in which the word is ordinarily applied, is manifested by the fact that the proof by appellant's witnesses shows that the Reynolds' car was proceeding, after being observed by the Geralds and before that time at a rate estimated to be from 15 to 25 miles per hour; the same witness fixed the speed of the Peden car at from 35 to 40 miles. While the evidence of the Geralds is not so certain as to some points, there is no conflict in the proof that at no time after being observed, at a distance of 75 to 100 yards, did the driver of the Peden car attempt to slacken its speed.

It may be observed that in considering the respective speeds of the two vehicles, the Peden car must have traveled about one-quarter of a mile after the Reynolds' car slowed down and was stopping or had stopped. If the evidence introduced by appellant in any wise manifested that the failure to give signal was the proximate cause of the injury, then the case should have gone to the jury. However, as we view the case from all angles, it is impossible to conclude otherwise than that the collision was the proximate result of the negligent operation of the Peden car by its driver.

If the case had been submitted to the jury, it could only have been so on the strength of the scintilla rule, which has been abrogated, and the rule is now that if a favorable verdict would, in the judgment of the trial

judge, be set aside as being flagrantly against the evidence, a peremptory is proper. Here the evidence adduced by plaintiff shows contributory negligence on the part of the driver of the Peden car, and but for which the collision would not have occurred, and we think the court properly took the case from the consideration of the jury.

Judgment affirmed.