## Berry v. Jorris et al.

February 4, 1947.

800

Doolan, Helm, Stites & Wood for appellant.

Jones, Keith & Jones and Woodward, Dawson, Hobson & Fulton for appellees.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Mrs. Lillian P. Berry, appellant, sued Herman G. Jorris and L. H. Redman, appellees, for her personal injury damages growing out of an automobile collision. The trial court directed a verdict for appellee Jorris. The jury then deliberated and returned its own verdict for appellee Redman. Mrs. Berry now appeals.

The asserted grounds for a reversal of the judgment rendered against appellant are these: (1) The peremptory instruction in favor of appellee Jorris was improper; (2) the jury was inadequately and improperly instructed as to the rights and duties of appellee Redman; (3) the verdict in favor of appellee Redman was not supported by sufficient evidence.

Mrs. Berry, age about 80, was riding in a car owned and operated by appellee Jorris around 6 P. M. on March 8, 1944. He was taking her to his home to look after his children, he and his wife having been invited out for the evening. The Jorris car was traveling in a southward direction along Bardstown Road in Louisville at a place where this thoroughfare has 3 southbound traffic lanes and 3 northbound traffic lanes. The Jorris car was in the median southbound lane. Another car, owned and operated by appellee Redman, was also traveling southwardly on this occasion, was slightly ahead of the Jorris car, was occupying the southbound lane nearest the road center. About 25 feet ahead of the Redman car there was said to be a third car, unknown car X, the identity of which has never been ascertained, also traveling southwardly, also traveling the southbound lane nearest the road center. All three cars were traveling at a speed of 20 to 25 miles per hour. Car X, without warning, suddenly stopped, preparatory to making a leftward turn out Woodbourne Avenue. Thereupon, the Redman car, following about 25 feet behind

car X, swerved to its right in order to avoid hitting this stopped car X. In swerving to the right, the Redman car entered the median southbound lane where the Jorris car was coming along almost immediately behind. In this manner, the Redman car and the Jorris car made an oblique collision, resulting in such a sudden stopping of the Jorris car that Mrs. Berry's head was thrown against the windshield and she was thrown off of her seat. The safety glass was cracked and caused to bulge out where Mrs. Berry's head struck, and although she had no knot or bruise on her head, no broken bones, yet she satisfactorily proved on this trial, we think, that she suffered some pain and some disability as a result of this accident. Car X, after making its momentary but sudden stop, proceeded on its way and no one ever saw it or heard of it again.

1. Was the directed verdict for Jorris proper? Only 3 witnesses, Mrs. Berry, Jorris and Redman, saw this accident. But only 2 witnesses, Mrs. Berry and Jorris, saw Jorris' part of the accident so as to be able to state on the trial what thing Jorris might have been doing or leaving undone so as to have caused the collision. Mrs. Berry said that Jorris was looking at her instead of the road and that he threw up his right hand, with which he was driving, "at the crucial moment." Jorris himself denied looking at Mrs. Berry or throwing up his hand, but he did say that his speed was 20 to 25 miles per hour. These three elements of proof, the failure to look, the hand throwing, the speed, constituted sufficient evidence to have supported a verdict in appellant's favor against Jorris, she contends, and therefore the trial court committed reversible error, she says, in directing a verdict for Jorris.

But we note that in certain parts of Mrs. Berry's testimony, she stated several times that the Jorris car was "just jogging along," that she herself was looking ahead at the road, that she herself had not seen the Redman car until it "whished right in front" of the Jorris car, that she did not think Jorris himself saw the Redman car until it "dashed out" in front of the Jorris car. Although Mrs. Berry was looking, she did not see the Redman car until it dashed or whished out. Mrs. Berry's own testimony, her use of these words, whish

and dash, makes one thing crystal clear—the Redman car appeared very suddenly and unexpectedly immediately ahead of the Jorris car. Therefore, had Jorris been looking (as he strongly asserts he was), even with eagle's eyes, how would it have availed him anything in the face of the suddenness of this appearance of the Redman car into his pathway? Could road watching or wheel holding or slower speed have avoided this collision under the circumstances of the picture painted to us by Mrs. Berry's own testimony in this case? We think not. We think there was no evidence whatever that Jorris could have avoided this accident by doing anything he might have left undone or by doing differently anything he was attempting to do. No witness denied that the Redman car's appearance ahead of the Jorris car was very sudden. No one, not even Mrs. Berry, stated that Jorris could reasonably well have avoided striking the Redman car in that twinkling-of-an-eye period between the latter's sudden appearance and the impact.

It is a well established rule of law that a claimant must, in order to successfully maintain a cause of action, prove that the damages, which have accrued to such claimant, were the natural and probable consequence of a wrongful act or omission, not too remote, on the part of the claimant's adversary in such cause of action. This is the universal rule of proximate cause. For a recognition of this rule, see Major Taylor & Co. v. Harding, 182 Ky. 236, 206 S. W. 285; Denunzio v. Donahue, 204 Ky. 705, 265 S. W. 299; Knecht v. Buckshorn, 233 Ky. 329, 25 S. W. 2d 727. A negligent act cannot be said to be the proximate cause of an accident unless the accident could have been avoided in the absence of such negligent act. It is a well settled legal principle that the violation of a statute or ordinance must, in order for such violation to result in liability for damages, itself have been the proximate cause of such damages. 5 Am. Jur. 596. Of course, it should now be observed that the causal relation between resulting damages and legal negligence is frequently a question for jury decision. But the question of this causal relation is one for the court, not the jury, where there is but one inference, one conclusion, to be drawn from the evidence. Where the minds of fairminded men could not reasonably differ, because

of the character of the evidence produced, as to the proximate cause of a claimant's damages, there could be no question for jury determination. See 5 Am. Jur. 875.

Now, in the instant case, all the evidence, without exception, showed a very sudden appearance of the Redman car immediately ahead of the Jorris car. No one denied that it happened in that very manner. We had no evidence whatever tending to show that Jorris, in the face of that sudden appearance, could have avoided the collision by doing anything he failed to do or by leaving undone something he did. Therefore, the trial court correctly directed a verdict, we think, in favor of appellee Jorris.

2. Was the jury inadequately or improperly instructed as to appellee Redman? Appellant insists that the jury should have been instructed to the effect that Redman's legal speed limit was, on prima facie basis, 20 miles per hour at the locality of the happening of this accident. Appellee Redman admitted that his speed was, upon this occasion, between 20 and 25 miles per hour. Appellant contends that this accident occurred in the "closely built-up business portion" of the city of Louisville, where a motorist's speed in excess of 20 miles per hour constitutes a prima facie case of negligent driving; that the accident did not occur in the "residence portion" of the city, where a motorist's speed up to 25 miles per hour does not constitute a prima facie case of negligent driving. See KRS 189.390.

This accident happened in what is called the "highlands" section of Louisville, many blocks from the business hub of the city. The place was neither a strictly business section nor a strictly residential section. It was in a sort of neighborhood, business locality. It was in a twilight zone, partly dark with business enterprise, partly light with residential structures. The statutes make no provision for a special speed ceiling in such a twilight zone. Therefore, the trial court may, in such a case, decide for itself, on the basis of adequate evidence, whether the locale in question is a "closely built-up business portion" or a "residence portion." This trial court, familiar with this exact location and probably accustomed to pass this place scores of times each year, exercised its discretion and determined that Bards-

town Road at Woodbourne was more of a "residence portion" than "a closely built-up business portion." And having made that determination, the trial court refused to give the jury a definite speed limit instruction because there was no evidence whatever that anybody was driving above 25 miles per hour, which is the ceiling mentioned by statute for a city's residential section. We are not prepared to say that the trial court abused its discretion in this respect. The evidence shows that there were six driving lanes at this locality, that its business places were interspersed with residential places and vacant lots. If this locality should be considered a closely built-up business portion of the city of Louisville within the meaning of KRS 189.390, then what should we call the downtown section where there are no residences whatever and where the existence of six driving lanes is a "consummation devoutly to be wished," as Hamlet once expressed himself? For an authority on the right of the trial court to exercise a sound discretion, to be substantiated of course by competent evidence, in deciding whether a section of a particular city is a business section or a residential section in a case of this kind, see Cundiff v. Nave, 240 Ky. 47, 39 S. W. 2d 471. We believe that this trial court correctly refused, in its own sound discretion and on the basis of the evidence produced, to instruct the jury in this case that appellee Redman's legal speed limit was, on prima facie basis, 20 miles per hour at the particular place of this accident.

Appellant further contends that the sudden emergency instruction, which the trial court gave to the jury upon this trial, was improper and that the giving of same in Redman's favor constituted reversible error. Appellant's theory in this respect seems to be that Redman's own negligence created this emergency through his own operation of his car too closely, about 25 feet, behind car X while the two cars were moving at their proven speeds of 20 to 25 miles per hour, that therefore Redman was not entitled to the benefit of this emergency instruction. It is indeed the law that a motorist cannot create an emergency by his own negligence and then derive a benefit from such a situation. See Robinson Transfer Co. v. Turner, 244 Ky. 181, 50 S. W. 2d 546; Rabold v. Gonyer, 285 Ky. 618, 148 S. W. 2d 728. This

is just about the equivalent of saying that a boy cannot kill his own parents and then plead for mercy upon himself because he is a poor orphan boy. But, in our instant case, the finger of this emergency's causation seems to have pointed only toward driver X, if he was involved at all, not toward Redman. We had no proof whatever that car X, which both Redman and Jorris said was involved, observed any statutory duty imposed upon it by KRS 189.380. Car X was really intending to stop, was really intending to turn leftward. But nobody in Christendom ever had a premonition, much less a visible warning, of those intentions. Then whom should we charge with the creation of this emergency? Was it Redman, who said, without refutation by anybody, that he was keeping a lookout and driving at moderate speed? Or was it driver X who, assuming he was involved in this accident, gave no part of the required 100-foot-long, left-turn signal, nothing of the required 45-degree-angle stopping signal? Would any reasonable, fairminded person doubt that Redman's car could have been stopped and properly controlled without ensuing harm if driver X had extended his hand as he came near Woodbourne Avenue on this occasion? We have heretofore held that one motorist, following behind his preceding motorist at a distance of 20 to 30 feet, both traveling at a moderate speed, had a reasonable right to assume that the preceding motorist would, in the event the latter decided to stop or to turn, observe the statutory duty imposed upon him by KRS 189.380, the duty of properly indicating his intention. See Vinson v. Kissinger's Adm'r, 274 Ky. 606, 119 S. W. 2d 628. Since the proof on this trial pointed unfalteringly to driver X, assuming he was there present, as the creator of this emergency, we think the trial court correctly instructed the jury on this particular subject for the benefit of appellee Redman. This instruction permitted, of course, the jury to decide for itself whether driver X was involved in this accident or was present at all on this occasion.

3. Was the jury's verdict in favor of appellee Redman supported by adequate evidence? From what we have already said, our affirmative answer to this question must be assumed. Both Redman and Jorris had the same theory about this case, which theory was that car X came to a sudden and unsignalled stop as it was mov-

ing just ahead of Redman, that this sudden stop caused Redman to veer sharply in front of Jorris with the resulting collision. Mrs. Berry had another theory, her's being that there was no car X whatever in this picture and that Redman swerved in front of Jorris without cause or explanation. The jury chose to believe the Redman-Jorris theory and to return a verdict for Redman based upon that theory. We think the evidence of Redman and Jorris, who were total strangers before the occasion of this accident, was amply sufficient to support the verdict of this jury and we have not been able to find any legal justification for a reversal of the trial court's judgment which arose out of that verdict. We are confident that the carelessness of some unknown driver actually caused this unfortunate accident, and while we would be happy to see this elderly lady receive some compensation for whatever harm it precipitated upon her, yet we are far from having any desire to see a penalization placed upon some party manifestly innocent of any wrong or to see reparations delivered to appellant in this case only upon the basis of an equalization principle rather than upon the basis of simple, ordinary, legal justice among the persons involved.

Wherefore, for the reasons stated herein, the judgment of the trial court is hereby affirmed.

Judge Dawson not sitting.