Allen S. CLARDY, Administrator, et al.,
Appellants,

v.

Dan ROBINSON et al., Appellees.

Court of Appeals of Kentucky.

Dec. 2, 1955.

White & Clark, James P. Hanratty, Hopkinsville, for appellants.

S. Y. Trimble, IV, Trimble, Soyars, Keith & Breathitt, Hopkinsville, for appellees.

CLAY, Commissioner.

This is a highway accident case in which the propriety of several directed verdicts is the issue on this appeal. Suit was filed

on behalf of a passenger who was killed and defendants cross-claimed for property damage. Appellees have moved to dismiss the appeal (on different grounds as to different appellants) and these motions are now overruled.

The accident happened one night on U. S. Highway 41 near Hopkinsville. The principal vehicles involved were proceeding north toward Hopkinsville on a straight stretch of highway. Appellees' truck, loaded with grain, was struck from behind by appellants' truck loaded with coal. They will hereafter be referred to as the "grain truck" and "coal truck".

A third truck, loaded with hay, proceeding from the opposite direction was also involved, and while its operation constituted a condition which led to the accident, the liability of its owner is not in issue on this appeal.

Shortly before the accident, the hay truck developed mechanical trouble and it was driven off the highway on its right hand side for the purpose of making repairs. The headlights were on and they faced in the direction from which the other two trucks approached. The driver of the hay truck had a flashlight in his hand, which he was moving around to examine the front part of the truck.

As the grain truck approached, its driver saw the hay truck tilted on the left side of the highway and thought the flashlight was being used to flag him down. The driver of the hay truck testified that his use of the flashlight could have been so interpreted. The driver of the grain truck slowed down and practically stopped, or did stop opposite the hay truck, and asked if help was needed. Within a matter of seconds the coal truck, which had been following the grain truck some distance behind, struck the latter in the rear end, and a passenger in the coal truck was killed.

The driver of the coal truck testified that he noticed the hay truck when he was about 250 feet away; that his attention was directed to the hay truck and that he did not see the grain truck until he was so close

that he could neither stop nor turn into the left driving lane to avoid the collision. However, he further testified that he had "noticed a bunch of lights there" ahead of him and that he "couldn't tell whether they were in the road or where". According to his testimony he did not take his foot off the accelerator or attempt to slow down until he was about 30 feet away from the hay truck.

All of the witnesses, except the driver of the coal truck, testified that stop lights and other lights on the back of the grain truck were burning at the time of the accident and after. While the driver of the coal truck testified he did not see any, he testified the accident happened so quickly that the rear lights on the grain truck "could have been on and he didn't see them".

On the claim of the deceased passenger's administrator, the jury found that the driver of the coal truck was negligent. Since the trial court directed a verdict for the owner and driver of the grain truck, the controlling question on this appeal is whether or not the issue of negligence on the part of the driver of the grain truck should have been submitted to the jury.

On this issue appellants' main contention is that the operator of the grain truck was negligent in slowing down, or stopping on the highway in violation of two Kentucky statutes.

KRS 189.390(5) provides as follows:

"No person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed *is necessary for safe operation* or in compliance with law." (Our emphasis.)

It is plainly evident to us that the driver of the grain truck did not violate this statute. He was confronted with an emergency. Off the side of the road was a disabled vehicle which would not be there except for some mishap on the highway. This vehicle was tilted at an angle and its head-

lights were on. Beside it was a man waving a flashlight. In such a situation the operator of a motor vehicle certainly should anticipate the danger to himself and others of proceeding without ascertaining that the highway was in a safe condition for travel. The statute authorizes the operator of a motor vehicle to operate at such a slow speed as to impede or block the movement of traffic if it "is necessary for safe operation". Clearly the driver of the grain truck did not violate the statute in slowing down to ascertain what traffic hazards were ahead of him. Such a course of action was necessary for safe operation of his truck.

KRS 189.450(1) provides in part as follows:

"No person shall stop a vehicle, leave it standing or cause or permit it to stop or to be left standing upon the main traveled portion of a highway; * * *."

An issue developed in this case as to whether the driver of the grain truck had merely slowed down or had actually stopped. In determining whether or not a directed verdict was proper, we must accept the evidence that he actually stopped. One witness who was in a restaurant about 250 feet away was of the opinion that the truck had stopped "two or three minutes". However, his other testimony, particularly the statement that "in a matter of two or three *seconds* this coal truck came along" (our emphasis), indicates clearly that if the grain truck had stopped, it was for a very brief interval. There is no intimation in this record that the driver of the grain truck had stopped for the purpose of leaving the vehicle standing on the highway. The uncontradicted evidence is that his slowing down or stopping was for the purpose of ascertaining the true traffic situation and inquiring if somebody needed help.

It is true that if KRS 189.450 is taken literally it does prohibit stopping upon the main travelled portion of the highway for any purpose other than that specified in the statute. Strictly construed it would prohibit a motorist from stopping when confronted with an obstruction, or from stopping to avoid a collision, or to avoid running over a pedestrian.

We have held that in the stopping of an automobile on the highway for an appreciable length of time, under conditions different from those shown here, the motorist is guilty of negligence per se. Ashton v. Roop, Ky., 244 S.W.2d 727; Burnett v. Yurt, Ky., 247 S.W.2d 227. More recently, in the case of Jack Cole Company v. Hoff, Ky., 274 S.W.2d 658, we held a truck driver negligent as a matter of law in violating the last above quoted statute when he stopped his truck on the main highway and left it standing while he went to the assistance of a disabled motorist on the side of the road. (Appellees in this case request us to overrule the holding in the above case to the effect that a vehicle stopped for the purpose of assisting another motorist may be classed as an "emergency vehicle" within the exclusion clause of KRS 189.450(1). This we decline to do.)

■ We believe KRS 189.450(1) must be construed in the light of its purpose and in the light of other statutes relating to the operation of motor vehicles on the highway. The general statute, KRS 189.290(1), enjoins the operator of any vehicle upon the highway to operate it "in a careful manner" with regard to the safety and convenience of pedestrians and other vehicles upon the highway. As before discussed, KRS 189.390(5) recognizes that a person may operate a vehicle at such a slow speed as to *impede* or *block* the movement of traffic when reduced speed is necessary for the safe operation of a vehicle. The objective of our motor vehicle laws is to secure so far as possible the safety of all motorists, and this certainly includes the safety of motorists confronted with the innumerable emergencies which arise on the highways.

■ Under the particular facts of this case, we are of the opinion that the driver of the grain truck in bringing his vehicle to a momentary stop for the purpose of ascertaining the traffic condition ahead and for the purpose of inquiring if he could ren-

der assistance was operating the truck in a careful manner as he is required to do by KRS 189.290(1). We also believe that slowing down as he did was necessary for the safe operation of his truck, as recognized by KRS 189.390(5). The actual stopping of his truck did no more to impede or block traffic than did its operation at a very slow speed. It would be a strained construction to say that bringing a car to a stop in an emergency is such a violation of KRS 189.450(1) as to constitute negligence. We construe this statute as having implicit in it what is expressly stated in KRS 189.390 (5); that is, if stopping is necessary for the safe operation of a vehicle (or in compliance with law) it is not prohibited. We therefore conclude that the driver of the grain truck did not violate the statute and cannot therefore be adjudged negligent on this ground.

Though appellants principally relied upon the violation of the above discussed statutes, some question is raised as to the negligence of appellees in failing to have the rear lights burning on the grain truck. The proof is overwhelming that these lights were burning before, at the time of, and after the accident. The only evidence which could make an issue on this point was the negative testimony of the driver of the coal truck to the effect that he saw no lights on the grain truck. He admitted they could have been on and he did not see them. However, there is no question but what he did see the hay truck and a "bunch of lights" at the scene of the collision when he was some 250 feet away. By his own admission he had ample warning that an unusual traffic condition existed ahead of him. He took no precautions whatsoever. If we were to concede that the coal truck driver's testimony created a jury question as to whether or not there were burning lights on the back of the grain truck, about which there is serious doubt, it is plainly evident that if negligence existed in this respect it was not a contributing cause of this accident because the coal truck driver admittedly had notice of an emergency traffic situation ahead of him.

We think the evidence viewed in the most favorable light for appellants shows clearly that the sole cause of this accident was the negligence of the coal truck driver. While proximate cause is normally a question for the jury, it becomes a question of law where there is no dispute about the essential facts of causation and but one conclusion may reasonably be drawn from the evidence. See Stevens' Adm'r v. Watt, 266 Ky. 608, 99 S.W.2d 753; Berry v. Jorris, 303 Ky. 799, 199 S.W.2d 616.

We find no reversible error.

The judgment is affirmed.