LITTLE ROCK TRACTION & ELECTRIC COMPANY *v.* MORRISON.

Opinion delivered May 4, 1901.

1. INSTRUCTIONS—FORM OF.—Where the instructions requested by the parties to an action were plain and simple, and not inconsistent, save in so far as the evidence conflicted, it was not error to give them as asked, with an introductory statement that they are assumed to be applicable, and are given, the one from plaintiff's standpoint, the other from defendant's. (Page 291.)

2. CONTRIBUTORY NEGLIGENCE—WHEN NOT A DEFENCE.—The fact that plaintiff, seeking recovery for a horse and buggy injured in collision with an electric street car, was himself guilty of contributory negligence does not debar a recovery if the peril was discovered by defendant's motorman in time to avoid the injury, had the defendant not been negligent either in selecting the motorman or in furnishing appliances for stopping the car. (Page 293.)

S C—19

3.  STREETS—TRESPASSERS.—The rule that a railroad is not liable to trespassers on its tracks for negligence in selecting employees, or in failing to keep its machinery in repair has no application to cases involving the duty of street cars towards persons and property on the streets of a city.    (Page 294.)

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

*Rose, Hemingway & Rose,* for appellant.

It was error for the court to premise the instructions with remarks designating them as emanating from the one side or the other.  53 Ark. 118.  It was error to refuse appellant's third prayer for instruction.  Antecedent negligence of a defendant becomes immaterial when the plaintiff is shown to have been guilty of contributory negligence.  62 Ark. 235; 64 *id.* 367; *id.* 420; 65 *id.* 435.  It was also error to give appellee's second and third instructions.  55 Ark. 393; 51 Ark. 89; 57 Ark. 203; 25 Ark. 490, 493; 30 Ark. 384.

*Cantrell & Loughborough,* for appellee.

There was no error in appellee's third instruction.  The refusal of appellant's third and fifth prayers for instructions was proper. The second and third instructions, taken together, clearly enunciate a correct proposition of law, and there was no error in giving them.  37 Ark. 354; 58 S. W. 434.  A judgment which is right upon the whole record should not be reversed for a harmless error or omission in one instruction, especially when it is cured by others. 10 Ark. 9; 14 Ark. 114; 10 Ark. 53; 19 Ark. 96; 2 Ark. 15; 21 Ark. 469; 23 Ark. 121; 24 Ark. 587; *id.* 326; 26 Ark. 373; 64 Ark. 237.  Appellee was not guilty of contributory negligence. 7 Am. & Eng. Enc. Law (2d Ed.), 371, 391; 155 Pa. St. 279; 153 *id.* 31; 89 Me. 594; 49 N. Y. Supr. 779; 37 N. E. 952; 41 S. W. 578; 2 Thomps. Neg. 1172, p. 18; Shearm. & R. Neg. 99, 31; Deering, Neg. 16.

BUNN, C. J.  This is an action for damages for injury to a horse, so as to necessitate its killing, and also for injury to a buggy and harness; in which verdict and judgment were for plaintiff in the sum of $250, and defendant appealed.

The plaintiff's driver was driving his horse to his buggy on the west side of Main street in Little Rock, between Twenty-third and Twenty-fourth streets, going north, and at the same time

defendant's street car was approaching from the north, going south. The horse began to show some restiveness when within fifty feet of the car, which was moving at a very moderate rate of speed, and under ordinary circumstances would have been fully under the control of the motorman. When within ten or twelve feet of the car, the horse suddenly jumped to the right and across the car-track, and was immediately knocked down and partially run over by the front platform of the car, and in the collision and in the effort to extricate it from the car was so badly crippled as to make it necessary to kill it. The buggy was also much broken up, as was the harness.

The questions arising upon the evidence are: First, "was the defendant guilty of negligence in running its car upon the horse and buggy? Secondly, was the plaintiff guilty of contributory negligence in suffering his horse to be driven in such close proximity to the street car? Thirdly, was the defendant guilty of negligence in failing to prevent the collision after the motorman saw the perilous situation of the horse?

The evidence of the company's negligence, primarily, is not at all definite and satisfactory, and the plaintiff's case therefore rest mainly on the question whether or not the motorman did his duty after he discovered the perilous situation of the horse. The contributory negligence of plaintiff, if he was guilty of contributory negligence at all, consisted in the incompetency of the driver, or in the unsafe character of the horse, or both. The driver was shown to be a negro boy 17 years old and well grown, who had had 5 years' training under his father, who was a professional horse trainer, and sometime in the service of the plaintiff, taking care of the horse in question and driving him to plaintiff's buggy, principally on the streets of Little Rock. The spirit and nervous character of the horse, and the use of it on the street car streets, appear to be the main grounds for the charge of contributory negligence on the part of the plaintiff.

Upon this state of facts, the trial judge instructed the jury, premising by certain introductory statements,—among them the following: "On the application of the plaintiff in this case, I give you the following instructions, that is, these instructions are all assumed to be applicable to the case. The court gives them all, one from the standpoint and theory of the plaintiff, and one on the theory of the defendant company." To this manner of presenting instructions to the jury the defendant's counsel strenuously

objects, saying that "from it the jury could only infer that there was one law for the plaintiff and another for the defendant, and that they were free to apply whichever they preferred. Naturally, their preference was not in favor of the corporation." In support of this contention, the case of *Davis* v. *Railway,* 53 Ark. 118, is cited, in which this court said: "While it is the duty of counsel to present their prayers for instructions, they are advisory merely; and the court should embody no more than their substance in a connected and consistent charge which contrasts the issues on each phase, and presents the whole law of the case as emanating from the court, without apparent instigation from either side."

From an examination of the opinion in that case, we are led to believe that the instructions were given as asked by counsel for both parties, without much reference to their consistency with one another, and with too little regard to that discrimination which should be exercised in giving the law to be applied to conflicting testimony. But in a case like the one at bar, where the instructions given at the instance of both parties are plain and simple, not misleading in the least, and withal inconsistent, if at all, only in so far as the facts in evidence on the one side are different from those on the other, we do not see that the mere manner of presenting them is so objectionable as claimed, or in this case at least should be cause of reversal; for this is to be determined at last by the specific instructions themselves.

Whatever may be the theory on the subject, the practice is very generally for the counsel to ask instructions to be in writing, and further to formulate them for the benefit of the court, and the court adopts or rejects or modifies these suggestions. If the court adopts them, they are given; if it modifies, they are given as modified; and if rejected, they are not considered at all by the jury. Indeed, we have a rule that a party cannot complain of the failure of the court to give a particular instruction unless he asked it, and this, of course, implies an asking in writing; and if not given in the exact language of the request, the party asking is not bound to accept it.

But the latter clause of the paragraph in the opinion in the case cited would seem to imply, as does the contention of counsel in the case at bar, that there is some innate evil in instructions being delivered to the jury in the handwriting of the two parties, for that, of itself, will indicate to the jury the desires of the parties. This reason for the objection goes either to the mental or moral

competency of the jurymen—a subject we do not desire to discuss. We see no reversible error in the instruction on this score.

The defendant asked and the court refused several instructions, and modified one, the fifth; but the only objection we deem it necessary to consider involves a question of principle somewhat involved in several of these, especially the one numbered 4, which reads as follows, to-wit: "If you find that the motorman did everything in his power to stop the car and avert the injury after discovering the perilous situation of the horse, your verdict should be for the defendant, even though you find that the failure to stop the car and avoid the collision was (due) to the inexperience of the motorman or the defective brakes or appliances, if you further find that the plaintiff's own negligence contributed to the injury."

This was refused by the trial court, and we think properly so; for it only makes the defendant company liable for the personal negligence of its motorman in not exercising the proper care to avoid the injury after he saw the perilous situation of the horse, and ignores the question of the incompetency of the motorman and the defect of the brakes and appliances as factors which, one or both, may have been the real cause of the failure to avoid the injury after the danger was apprehended. If a motorman does not know how to stop a car when it is desired to stop it, and the circumstances go to show that the incompetency was known or should have been known to the master when he put the motorman in charge of the car, the master is directly to blame; for he has, in effect, failed to provide himself with the means to prevent injuries, which he could otherwise do. And the same rule applies in the case of defective brakes and other appliances.

Again, negligence in employing servants and in using defective machinery, while antecedent in a sense, is yet contemporaneous with such an injury, in the more important and the more practical sense. An incompetent motorman, until he is put in charge of a car, and directed to run it, is a harmless incompetent; but, as soon as he sets his car going on the track, he is a dangerous agent, because, while he knows how to put his car in motion, he does not know how, or is unable, to stop it when he should do so to prevent injury; for much of that which the company owes to the public depends upon the skill and competency of the motorman. It is not only negligence in the master to knowingly employ an incompetent servant, and to use machinery so defective as to refuse to

respond to the demands of a competent servant in charge, but it is also negligence in the master to employ an incompetent servant or to use defective machinery at any time.    In both instances the negligence of the master in employing the incompetent servant and not keeping his machinery in order, while commencing antecedently to the injury, yet is contemporary, as to the time when called into active service and use, and does an injury.

The cases cited in support of the contention of defendant that the company owes no duty to trespassers on the track, and therefore is not liable for antecedent negligence, such as the want of care in selecting servants and keeping machinery in repair in cases of contributory negligence, are railroad cases, and are in most respects not applicable to cases involving the duty of street car companies; for it may be said, in a general way, that there are no trespassers on the streets of a city.    Every one has a right to go on the streets and on any part of them.    In a sense, it is said that street cars have the right of way; but that is because of the weight, speed and momentum of the cars, the great number of persons carried on them, their necessity to run on schedule time, and their strict confinement to the appropriate track, and other like circumstances.    Except to accommodate these peculiarities, the street cars have no real right of way over all travelers on the streets, and it cannot therefore be said there are any trespassers.    The case is different with railroads.

The crossings of public roads are the nearest analogy of the case of railroads to the case of a street car line.

The street car company owes a duty to all persons on the streets, perfectly commensurate with the relative situation between it and them.    One of those duties is to exercise reasonable care not to injure, for the privileges of both are such as call forth such care at all times.

Affirmed.