Cole and another, Respondents, vs. Phephles and another, Appellants.*

*September 16—October 13, 1942.*

* Motion for rehearing denied, with $25 costs, on December 8, 1942.

156

158

For the appellants there were briefs by *Johnson, Fritschler & Barstow* of Superior, and oral argument by *Barney B. Barstow.*

For the respondents there was a brief by *Crawford & Crawford,* and oral argument by *Andrew Borg,* all of Superior.

ROSENBERRY, C. J.    Upon this appeal the defendants contend that there is no evidence to sustain the jury's finding that the defendant Phephles was guilty of negligence which caused the collision.    We shall dispose of some preliminary matters first.    We are unable to understand upon what theory the trial court submitted to the jury the question relating to Phephles' failure to leave a clear and unobstructed width of not less than fifteen feet upon the highway opposite his vehicle for the free passage of other vehicles.    On behalf of the plaintiffs it is claimed that at the time of the accident the left front wheel of

the Phephles car was a little over the center line to the left. While this was denied by the occupants of the Phephles car the jury found in favor of the plaintiffs upon this issue. Assuming that the Phephles car was in the position claimed by the plaintiffs, that could have no causal relation to the accident. Olson had no intention of turning to the left. He testified that when it became apparent that he would have to stop his car, he intended to turn to the right and did turn to the right enough to bring his right wheel upon the shoulder of the highway. Instead of the position of Phephles' car being a cause of the accident, if it had been still farther to the left, the accident would have been avoided.

The jury also found that Phephles was guilty of negligence in failing to exercise ordinary care in keeping a lookout. We find no evidence to sustain this finding. It is certain that Phephles saw everything in front of his car which he was required to see in the exercise of ordinary care. He saw the barrier on the right. He thought he saw a car coming from the south on the left. He saw the lights of the Olson car in the rear. He had seen the lights a long ways back. He saw the Smith car, brought his car to a stop a distance of fifteen or twenty feet to its rear. We find no evidence in the record which sustains the jury's finding that Phephles did not keep a proper lookout.

The controversy in this case turns upon whether Phephles, knowing that the Olson car was following him somewhere in the rear, operated his car—

"so as to endanger or be likely to endanger the property, life, or limb of any person, or without due regard to the traffic, surface, width of the highway, and any other condition of whatever nature then existing." (Sec. 85.40 (1), Stats.)

If Phephles violated sec. 85.40 (1), Stats., in any way whatever, it was in bringing his car to a sudden and unexpected stop. As already stated, the jury found him guilty of negli-

gence in this respect. The plaintiffs attempt to support this finding of the jury by the testimony of one Irene Lemponen, a stenographer. She testified that on August 13, 1940, Phephles and his son were in the office of plaintiffs' counsel; that at that time she took down the answers Phephles made to questions asked by counsel. After some colloquy between counsel the statement was offered and received in evidence against the objection of the defendants. In the statement appeared the following:

"My car was damaged to the rear. The car behind me hit my car. I slammed down my brakes so I wouldn't hit the car in front of me. It threw my car over to the left side of the road."

The Phephles car was stopped when it was struck by the Olson car. The fact that Phephles then slammed on his brakes could have in no way contributed to the accident. If after his car was struck Phephles slammed on his brakes to prevent his car striking the Smith car, he was in the exercise of more than ordinary care.

All the evidence in the case, especially that of Olson and the occupants of his car, shows that Phephles brought his car to a stop slowly. He followed the Smith car at a safe distance. When he saw the Smith car was slowing down, he slowed down. When it was brought practically to a stop, he stopped fifteen or twenty feet in the rear of the Smith car. When he put on his brakes the Smith car was traveling eight to ten miles per hour. He had been slowing down for some time before he put on his brakes, Olson says for a distance of four hundred to five hundred feet in one place, two hundred to three hundred in another. He did not attempt to pass the Smith car because as he said he believed another car was coming from the south. The other witnesses denied that a car was approaching from the south.

Upon the trial Olson testified in substance as follows:

"We followed the Phephles car for about four miles. We were approximately ·250 feet behind him at the DeLuxe tavern. Both cars were going approximately the same speed. As we got near the DeLuxe tavern I noticed the distance between my car and the Phephles car was closing up. I knew that he was slowing down. It was about 400 or 500 feet from there that the actual collision took place. For 400 or 500 feet from there I knew he was slowing down and I started to slow down. When I got a short distance past the driveway I noticed the brake lights on the Phephles car go on. When I saw the lights flash I then applied the brakes on my car. I was then fifty or sixty feet from the Phephles car. I tried to bring my car to a stop and couldn't do it and the collision happened."

The testimony of the occupants of the car driven by Smith is to the effect that as they passed the DeLuxe tavern they concluded to go in. Before the decision was reached they had passed the entrance, Smith slowed down the car and drew to the right or west side of the highway, intending to wait for the other cars to pass and then turn around and go back.

On the trial Phephles testified substantially as follows:

"Just before we got to the DeLuxe tavern there is a kind of a slope in the road. I had been following the car in front of me before the accident for around two miles. I was traveling four or five blocks behind it. As I came up to the DeLuxe tavern the distance between my car and the car ahead became less. As we came up to the DeLuxe tavern I saw the brake lights on the car ahead going on. They were very plain. The pavement was very dry and there was nothing to obstruct my view of this car ahead. As soon as I see the lights on, I was pretty close, I put my brakes on. I had no trouble bringing my car to a stop. As soon as I stopped the Olson car hit me. After the car ahead stopped I didn't have a chance to drive either to the right or left. I intended to pass him. I saw the lights of the car behind me but I did not know how far it was."

It is to be noted that from the undisputed evidence it appears that Phephles brought his car to a stop in the same distance

that the Smith car was brought practically to a stop. It is not clear whether the Smith car was standing still or was in motion when the Olson car struck the Phephles car. After the accident the Olson car which stopped when it hit the Phephles car was thirty to forty feet from the Smith car. If the Smith car was not completely stopped, it must have been very nearly so. It is admitted by all of the witnesses that the Smith car was practically stopped (Smith testified that after he decided to stop he was in low speed going eight or ten miles per hour). It is undisputed that the Phephles car was from fifteen to twenty feet behind the Smith car when the Phephles car stopped; that the Smith car was thirty to forty feet from the Olson car after the accident; that Olson when he was some distance north of the DeLuxe tavern noticed that Phephles was slowing down and that he was fifty to sixty feet behind him when Phephles' brake lights went on. This testimony certainly does not sustain a finding that Phephles brought his car to a sudden stop. Taken as a whole in connection with the physical facts it establishes just the opposite.

It further appears from Olson's testimony that his brakes were inefficient. He testified that—

"If I was going to stop and applied my brakes the back wheels always skidded. I knew this before the accident. I knew that if I was driving at a rate of speed I would have to allow for skidding if I attempted to stop. There wasn't enough weight for traction. The tires were all new."

There can be little doubt that this peculiar condition of the Olson car contributed substantially if it was not the sole cause of the accident.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to dismiss the plaintiffs' complaint.