LOUIS CONWAY COLLINS *v.* HIROSHI SHISHIDO.

No. 4294.

June 30, 1965.

Tsukiyama, C. J., Cassidy, Wirtz, Lewis and Mizuha, JJ.

OPINION OF THE COURT BY CASSIDY, J.

This is an appeal by plaintiff from a judgment entered on a verdict returned for the defendant after an extended trial of an action for personal injuries and property damage sustained by plaintiff in a collision between an automobile driven by plaintiff and a pickup truck belonging to the defendant, which truck was being operated in the course of defendant's business by one of defendant's employees, Gerald Kalua.

The collision occurred about 3:30 p.m. on April 30, 1957, at the T-intersection of Atkinson Drive with Kapiolani Boulevard in Honolulu. Plaintiff was traveling Ewa (west) on Kapiolani Boulevard and had brought his automobile to a stop in the mauka (north) lane within a few feet of the prolongation of the Waikiki (east) curb of Atkinson Drive, when it was struck in the rear by defendant's truck. It was plaintiff's testimony that he had been at a stop for approximately fifteen seconds before his automobile was struck. He said he made a normal stop behind a police pickup truck which had stopped in the intersection and that when the police truck pulled away he noticed a person standing on the sidewalk with a "No Left Turn" traffic sign in his hands. Plaintiff said he

signaled the person to cross in front of his automobile, but did not see what happened to him because "the impact occurred so fast."

Kalua was called as a witness for the plaintiff. It appears beyond any doubt from his testimony that the brakes of defendant's truck were not functioning properly. Kalua said that the brakes of the truck had been skipping and that it was necessary for him to pump the brake pedal to make them operate. He had discovered the condition of the brakes earlier in the afternoon but thought he could operate the truck safely by not traveling as fast as usual and by being extra careful. On cross-examination Kalua testified that he was proceeding from the St. Louis School area and that he was able to make all necessary stops, including some on downhill stretches. The last stop he made was at the intersection of Kapiolani Boulevard and Kalakaua Avenue, which is several hundred feet from the point of the collision. It was his testimony that after he proceeded from the stop at Kalakaua Avenue he shifted from low to second gear; that just before the collision he was traveling in second gear at from 20-25 miles an hour; that when he was about three car lengths away from plaintiff's automobile it slowed down and then stopped; and that his truck crashed into the automobile because the condition of his brakes prevented him from stopping the truck in time. Kalua testified that as he tried to brake the truck he saw a person jump to the curb from in front of the plaintiff's automobile. It may be inferred from Kalua's testimony that one of the reasons for the collision was that plaintiff had stopped his car suddenly. It can be deduced from plaintiff's own testimony that he did not make a hand signal before or while stopping his car. In this connection plaintiff testified, without particularizing as to type or size, that his automobile was equipped with tail lights which showed red when the brakes were applied.

The only regulations in evidence respecting signaling were subparagraphs a and f of Paragraph 7, Section VIII, of the Honolulu Traffic Code, reading as follows:

"7. *Signals on starting, stopping and turning.*

a. The driver of any vehicle upon a public highway before starting, turning or stopping such vehicle shall first see that such movement or cessation of movement can be made in safety; then if any pedestrian may be affected by such movement, the driver shall give a clearly audible signal by sounding a horn or other warning device, and whenever the operation of any other vehicle may be affected by this movement, the driver shall give a signal plainly visible to the driver of such other vehicle of the intention to make such movement.

\* \* \* \* \* \*

f. All signals herein required given by hand and arm shall be given from the left side of the standard vehicle and from the right side of a right-hand driven vehicle in the following manner and such signals shall indicate as follows:

  (1) From a standard left-hand driven vehicle
    (a) Left turn—Hand and arm extended horizontally.
    (b) Right turn—Hand and arm extended upward, and beyond the left side of the vehicle.
    (c) Stop or decrease speed—Hand and arm extended downward, beyond the left side of the vehicle, palm of hand to rear."

Plaintiff's first specification of error is predicated on the court's refusal to give his Requested Instruction No. 19, reading as follows:

"You are instructed that a motorist has a right to follow another motorist at a reasonable and safe dis-

tance. However, he must govern his speed or keep back a reasonably safe distance so as to provide for the contingency of a car in front suddenly stopping, maintaining a proper lookout for the car immediately preceding him and so that he can stop or otherwise avoid a collision. The driver of the car following behind another under circumstances such that he should anticipate the possibility of obstruction or trouble of some sort, should have his car under such control or proceed at such a rate of speed that he can stop at once if the car in front stops."

The first sentence of the requested instruction adds nothing that was not otherwise given to the jury in the court's charge, particularly by the inclusion in the charge of Plaintiff's Requested Instruction No. 18 which informed the jury an applicable ordinance required that, "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." The remainder of the proffered instruction places the duty on a trailing driver to operate his vehicle in such a manner that he "can stop at once" or otherwise avoid a collision if the car in front stops. The ability to stop instantly under any and all circumstances is not a necessary part of having an automobile under control. *Carruthers* v. *Campbell*, 195 Iowa 390, 192 N.W. 138; *Consolidated Coach Corp.* v. *Hopkins' Adm'r.*, 238 Ky. 136, 37 S.W.2d 1. The instruction also imposes a duty on the trailing driver to anticipate possible emergencies and fastens the responsibility on him to avoid a collision regardless of the actions of the driver of the leading vehicle. It thus makes or comes close to making the operator of a trailing vehicle an insurer whenever there is a rear-end collision. We are of the opinion that the requested in-

struction requires an excessive and unjustified degree of care on the part of the operator of a trailing car. See *Vinson* v. *Kissinger's Adm'r.*, 274 Ky. 606, 119 S.W.2d 628.

In support of the instruction appellant cites as a leading case and relies on *Brehm* v. *Lorenz*, 206 Md. 500, 112 A.2d 475, quoting from it as follows: ". . . Thus, it is the duty of the rear driver to keep a safe distance between vehicles, and to keep his machine well in hand, so as to avoid doing injury to the machine ahead. . . . The driver of the rear car must exercise ordinary care to avoid colliding with the front car. . . ." As far as it goes the quotation correctly states the basic proposition of law applicable here—although there is much pertinency to the question before us in an omitted sentence reading, "The driver of the front car must exercise ordinary care not to stop or slow up without giving the driver of the rear car adequate warning of his intention to do so." The case actually involved application of the *res ipsa loquitur* doctrine. It does not support appellant's contention that, as a general proposition, the operator of a trailing vehicle is responsible for a rear-end collision resulting from his failure to anticipate an emergency stop by the leading vehicle. It appears to hold quite to the contrary. The Maryland court, in affirming a judgment on a directed verdict for the defendant-trailing-driver in a rear-end collision, states (pp. 479-480):

"* * * Moreover, as we said in *Mitchell* v. *Dowdy*, 184 Md. 634, 642, 42 A.2d 717, the fact that one automobile is traveling in close proximity to another does not of itself constitute negligence. If it appears that the driver of an automobile brought it to a sudden stop because of some emergency, without giving any warning to a driver following at a reasonable distance, there is no presumption that the rear driver was negligent unless he had the chance to stop after the neces-

sity of stopping was apparent. *Weaver* v. *Motor Transit Management Co.,* 252 Mich. 64, 233 N.W. 178, 179.

"In this case the front car, in which Mrs. Brehm was riding, was stopped unexpectedly and very suddenly when the driver saw the cat. The sudden stop in itself could be ample cause for the collision. In these circumstances, the doctrine of *res ipsa loquitur* was not applicable."

There was no error in the refusal of Plaintiff's Requested Instruction No. 19.

Specification of Error No. 2 assigns error to the refusal of the court to give Plaintiff's Requested Instruction No. 20, reading:

"The Court instructs the jury that the Defendant has the burden of proving his defensive pleas, and, if the evidence in this case shows that the Plaintiff was lawfully stopped in his automobile on a public highway waiting for a pedestrian carrying a street sign to cross in front of his automobile, and while thus stopped was struck from behind by a beverage truck with defective brakes owned by Defendant and negligently driven by an employee or servant of Defendant, while exercising that care and prudence that is ordinarily exercised by prudent men similarly situated, the Defendant's plea of contributory negligence has not been sustained."

We are unable to see how this instruction could have done otherwise than confuse and mislead the jury. It is obvious that the clause, "while exercising that care and prudence that is ordinarily exercised by prudent men similarly situated," is misplaced and that by reason thereof the instruction is made so confusing as to be almost meaningless. However, that is not its only defect.

The use of the plural in the term "defensive pleas" in the opening clause of the instruction was improper and misleading. There was only one "defensive plea" the defendant had the burden of proving, and that was the affirmative plea of contributory negligence set out in his answer. Appellant's startling assertion in the opening brief that, "Defendant Shishido had the clear burden of proving both of his defense pleas of no negligence on the part of Kalua and contributory negligence on the part of Plaintiff-Appellant Collins by a preponderance of all of the evidence adduced," explains but obviously does not justify the use of the plural form of the term under consideration.

Further, the instruction singles out and, we think, unduly emphasizes plaintiff's testimony to the effect that he had stopped to let someone pass in front of his car to place a traffic sign in the street. As is stated in *Powell* v. *Bartmess*, 139 Cal. App. 2d 394, 294 P.2d 150, 156, the vice of this type of instruction is that "it unduly emphasizes one portion of the evidence, puts the court in the position of making an argument to the jury, and misleads the jury into thinking that because the court has specifically mentioned certain testimonial facts they are of undue importance or that the court believed them to be true."

The principal intended purpose of the instruction undoubtedly was to advise the jury that if the evidence showed that the plaintiff was acting with due care and prudence under the circumstances when his car was struck by defendant's truck while the truck on the other hand was driven by an employee of the defendant in a negligent manner, then the defendant's plea of contributory negligence was of no avail. Again, reading the instructions as a whole, as we must (*Kealoha* v. *Tanaka*, 45 Haw. 457, 370 P.2d 468), we think this aspect of the law was sufficiently brought home to the jury by other instructions, in-

cluding Plaintiff's Requested Instruction No. 11, which was given as follows: "You are instructed that if you find from a preponderance of the evidence that Defendant was negligent as defined by the Court in these instructions, and as claimed by Plaintiff, which negligence was a proximate cause of the accident and of Plaintiff's injuries; and if you further find from the evidence that Plaintiff was not contributorily negligent, as defined by the Court in these instructions, then you must bring in a verdict for the Plaintiff."

Specification of Error No. 2 is overruled.

The third specification of error reads:

"The trial court committed reversible error in not declaring a mistrial *sua sponte,* or in not cautioning the jury, or in not disciplining Defendant-Appellee's counsel for his unlawful misconduct, when the latter, during his closing argument to the jury unlawfully, falsely and unfairly charged Plaintiff-Appellant with telling 'us a bald-faced lie right here in the Courtroom' and that 'Mr. Corey helped him to do it'; further unlawfully commented to the jury on speculative, non-evidentiary street, speed and time measurements and other non-evidential and extra-judicial matters which had never been admitted in evidence, were inserted after the defense had rested, and were not contained in the record of the case; and further misstated considerable evidence to the jury, which error resulted in substantial resulting prejudice to Plaintiff-Appellant's case and rights, as is reflected in the adverse jury verdict. (See: Appendix 'H')."

Overlooking the multifariousness of this specification it still remains that with the exception of the error asserted in respect to defense counsel's argument charging plaintiff with telling "a bald-faced lie" nothing else mentioned in or intended to be raised by the specification is

set forth with anything near the particularity required by this court's Rule 3(b)(4)[1] to be reviewable. See *State* v. *Kahua Ranch*, 47 Haw. 466, 390 P.2d 737. We will, however; take cognizance of the claim that reversible error was committed by the failure of the court to declare a mistrial because defense counsel accused plaintiff of telling "a bald-faced lie" and stated his attorney helped him do it.

The alleged error occurred and was raised during the course of the answering argument to the jury as follows:

"MR. EVENSEN (Defense Counsel): We've been talking about inconsistency and contradictions but Mr. Collins told us a bald faced lie right here in the courtroom. Mr. Corey helped him do it.

"MR. COREY (Plaintiff's Counsel): I object, Your Honor. I object unless Mr. Evensen has proof beyond a reasonable doubt. This is unfair argument, move to strike counsel's statement and remarks.

"MR. EVENSEN: Your Honor —

"THE COURT: Let's hear what the argument is about. I think I know what he has reference to, the preparation of the yellow sheet on the days he missed copied from the complaint.

"MR. EVENSEN: If it please the Court —

"THE COURT: Which was copied by you.

"MR. COREY: That is right. I would like to have him prove I stated a bald faced lie. I object to that as being highly improper.

"THE COURT: That part will be stricken. The part as to your copying, his testimony supports it."

---

[1] This provision of the rule requires the opening brief to contain among other things: "A specification of errors relied upon, which shall be numbered, and shall set out separately the particulars of each error intended to be urged."

Defendant's counsel thereupon, without further objection and without interposition by plaintiff's counsel of a motion for a mistrial or request for further admonition to the jury, proceeded to relate the facts upon which he rested his accusation. Under the circumstances the contended error might well be deemed to have been waived by plaintiff's acquiescence in so proceeding with the trial, but in view of the stress placed on this feature of the case in connection with the error alleged for denial of plaintiff's motion for a new trial we will scrutinize the record and consider the claimed misconduct of counsel on the merits.

While on the stand on a Friday (August 11, 1961), plaintiff was asked on direct examination to state, according to his best recollection and memory, how much time he lost from work in May 1957. He said he had a memorandum covering the matter and would like to refer to it. His counsel stated, "Perhaps, I think I know where it is," and asked the court's indulgence for time to find the memorandum. It being near the noon hour, the trial was recessed over the weekend without further examination of the plaintiff.

On the following Monday, plaintiff's counsel reverted, in the morning session, to questioning him on the amount of time he had lost from work in 1957 on account of the accident, specifically, during the months of May to September. Plaintiff said he could not remember the precise number of days he had lost in the months referred to but said that, "At this moment I have a recap of the number of days lost during the months I stated." He explained that the recap was made from original contemporaneously entered diary notes which had been misplaced. Defense counsel objected to the use of the recap on the grounds that a proper foundation had not been laid. The interrogation then proceeded as follows:

"Q (By Mr. Corey) What is that recap, Mr. Collins?

"A The recap is of the number of days during the month that I lost.

"Q You know where it came from?

"A Yes. This was a recap I had kept with the facts pertaining to the case.

"Q And is this the same one as in your complaint?

"A That's correct.

"THE COURT: I think the important factor is not what is in the complaint or not but whether or not at what time did you make them?

"Q At what time did you make this recap? Do you remember?

"A I made it sometime during the year of 1957.

"Q Before or after the accident?

"A It was after the accident.

"Q Do you remember exactly when after the accident in the year '57 you made that recap?

"A I could not give you the exact date but to the best of my recollection it was at the time I was preparing my information for the tax returns."

From the foregoing and from further testimony by plaintiff in the Monday morning session it is plain that plaintiff was stating and intending to convey to the court and jury that he had prepared the memorandum then in his possession in 1957 and that, by his questioning, plaintiff's counsel aided or led his client into making that representation.

During the Monday afternoon session the following occurred on cross-examination of plaintiff:

"Q Now, the recap sheet that you are using this morning, that's in your own handwriting, is it not?

"A That recap sheet?

"Q Yes.

"No. It may be in my wife's, it might be in, I would be hard pressed to say. I would recognize my own handwriting.

* * * * *

"Q Now, Mr. Collins, I show you a document purporting to be Defendant's Exhibit, which is Defendant's Exhibit A, for identification [the recap sheet] and ask you if you recognize that document?

"A Yes. I recognize it but this is not my own handwriting.

"Q This is not your handwriting?

"A No.

"Q Do you recognize the handwriting?

"A Yes. This is Mr. Corey's handwriting."

Further questioning brought out that the memorandum plaintiff had referred to in his testimony on Friday had been misplaced and that the memorandum he had in his possession on Monday was prepared, at his request, by his counsel before appearing in court on the morning of the same day from the information set out in the complaint which plaintiff had furnished.

On this record it appears to us that the facts developed in the subsequent interrogation of plaintiff himself show that he deliberately gave false testimony when he said that the memorandum he had with him on Monday had been prepared by himself, and also when he said that it had been prepared in 1957. Further, his testimony that the memorandum had been prepared at his request by his counsel on Monday morning, taken in conjunction with the questions asked him on direct examination in reference to it, readily permitted the argument that plaintiff's counsel had helped plaintiff in making the false representation.

Defense counsel's attack on the credibility of plaintiff and his remark respecting plaintiff's counsel, being fully

sustained by the evidence and supported by the record, were, in our opinion, well within the scope of legitimate argument. As is stated in 88 C.J.S., *Trial,* § 185, pp. 366-369: "The object of summation to the jury is to give counsel an opportunity to comment on the evidence, as discussed supra § 182, and, within reasonable limitations, that includes the right to comment on those who give the evidence. The range of such comment is necessarily in the discretion of the trial judge. Where his remarks are not sustained by the facts it is improper for counsel in argument to make statements reflecting on the character or conduct of the opposite party or his attorney, or the officers, employees, or any of the witnesses of such party, or concerning their testimony, or of a codefendant of counsel's client. Counsel should not indulge in personal criticism of the opposing attorney. However, where evidence sustains his statements he may reflect on the character, conduct, or credibility of a party, or of persons under control of a party, or of witnesses; he may, under other circumstances, where the evidence sustains his statements, reflect on the testimony of witnesses, or of the conduct of opposing attorneys, or he may reflect on the testimony of his own witnesses."

Specification No. 3 is overruled.

The last two specifications of error will be considered together. By Specification No. 4 it in effect is claimed that, as a matter of law, the verdict cannot be supported or warranted by the evidence. Specification No. 5 avers that the trial court committed error in denying plaintiff's motion for a new trial.

No motion for directed verdict was made by the plaintiff. The sufficiency of the evidence was not in any way contested until he filed a motion for a new trial. Under these circumstances, there might be a question of plaintiff's right, at this stage and in this court, to a review

of the sufficiency of the evidence. See *Pooler* v. *Stewarts' Pharmacies, Ltd.,* 42 Haw. 618, and *cf., Jacobson* v. *Yoon,* 41 Haw. 181. However, this procedural point was not raised by defendant and has not been argued or briefed by the parties. We accordingly deem it inadvisable to make a ruling on the point but will assume for the purposes of argument in this case that the question of the sufficiency of the evidence may be considered to have been effectively raised and reserved for review by the attack on the verdict made by the motion for a new trial. We nevertheless are of the view that the verdict must be sustained.

Plaintiff's argument proceeds from the basic contention that, as a matter of law, the evidence permitted only a finding of negligence on the part of defendant and only a finding that the plaintiff was not contributorily negligent. We can assume or conclude that, as far as the defendant is concerned, the evidence warrants only a finding that Kalua was negligent and that his negligence was a proximate cause of the vehicles colliding. However, we cannot agree that the evidence allows but one finding on the issue of contributory negligence. If we could accept the premise, as plaintiff argues, that his automobile was at a standstill for fifteen or more seconds before it was struck by defendant's truck, we undoubtedly could agree that, as a matter of law, the evidence would not support or permit a finding of negligence on plaintiff's part. The reasoning and holding in *Fuld* v. *Maryland Casualty Company,* La. Ct. App., 178 So. 201, relied on by plaintiff, would then be applicable to exonerate plaintiff. But the evidence did not require acceptance of plaintiff's version that his automobile had been stopped for an appreciable interval of time before it was struck. As we have stated earlier, there was testimony from which the jury could infer that the plaintiff brought his car to a sudden stop when the defendant's truck was not more than thirty feet

behind it. Further, the jury could have found plaintiff had failed to give a hand signal of his intention to stop. Considering these circumstances and the fact that the stop was made at or in an intersection, some fifty or more feet from a crosswalk, findings by the jury that plaintiff was contributorily negligent and that his negligence was a proximate cause of the accident were within the range of the evidence. We cannot say that reasonable men could not reach different conclusions in resolving the conflicts in the evidence and in the inferences to be drawn from the evidence and in determining whether or not plaintiff operated his automobile in a prudent manner. The issue of contributory negligence was therefore properly one for the jury to decide. *Young* v. *Price,* 48 Haw. 22, 395 P.2d 365. Applicable to this case are the generalizations set out in 8 Am. Jur. 2d, *Automobiles,* § 770, pp. 329-330, as follows:

> "The sudden stopping of his vehicle by a motorist, resulting in a collision between his vehicle and the one behind constitutes negligence, particularly where such stopping is unsignaled. The duty to give a signal or warning of the intention to stop or slow a motor vehicle on the highway is embodied in statutes in most jurisdictions, but it has been recognized that the common-law duty of exercising ordinary care in the operation of a motor vehicle may also require such a signal. Under ordinary circumstances the determination whether ordinary care required the giving of such a signal would be left to the jury as a question of fact.
>
> \* \* \* \* \*
>
> "\* \* \* However, the fact that the stopping vehicle was equipped with rear lights operating off the brakes has been held not necessarily to relieve the driver of negligence in stopping suddenly ahead of another motorist, even though the relevant statute provided

for the giving of stop signals by an electrical or mechanical device."

In addition to the alleged ground that there was not any substantial evidence, amounting to more than a scintilla to support the verdict, which we have rejected, the second ground for new trial set out in plaintiff's motion in essence is that the verdict was so "clearly, palpably, decidedly, and strongly" against the evidence as to indicate it was rendered and given under the influence "of passion, prejudice, hurry, opportunism, fatigue, undue influence, bias, partiality, or vindictiveness" and of defense counsel's "falsely alleging and arguing to the jury upon closing argument that Plaintiff and Plaintiff's counsel were both 'bald-faced liars.'"

The approach to a review of the second ground of the motion is as stated in *Pooler* v. *Stewarts' Pharmacies, Ltd.*, *supra*, 42 Haw. 618, at 623: "So, we direct our inquiry to the question as to whether the court abused its discretion in denying the motion. In pursuing such inquiry, we start with the following statement of Justice Brandeis in *Fairmount Glass Works* v. *Cub Fork Coal Co.*, 287 U.S. 474, at page 485, with which we agree: 'Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence and perspicacity in appraising the jury's conduct.'" Also as is stated in *Rainbow Is. Prod.* v. *Leong Agency*, 44 Haw. 134, 137, 351 P.2d 1089, 1091, we must have due regard for the trial court's "feel for the case."

We are satisfied that there was no want of diligence or lack of perspicacity on the part of the trial court in considering and deciding the motion. From our analysis of the record and the evidence, we are satisfied that there could be no justification for our holding that the trial court abused its discretion in denying the motion for a new trial.

Specifications No. 4 and No. 5 are overruled.

The judgment is affirmed.

*Ralph E. Corey* (*Clark & Corey* of counsel) for plaintiff-appellant.

*Albert W. Evensen* for defendant-appellee.

---

CONCURRING OPINION OF LEWIS, J.

I concur in the portion of the court's opinion which holds that the argument to the jury on the part of defendant's counsel was justified by the record. This concurring opinion concerns the remaining specifications of error.

Defendant's employee, Kalua, testified that, at the scene, he told the police officer: "I hit the other car because of my brakes." However, when directly questioned on his prior experience in stopping the truck, he testified that he never before had had occasion to stop suddenly. All that was elicited was that a normal stop at the speed of 20 to 25 miles an hour with the truck loaded as it was that day, would require 25 to 30 feet to stop the truck with good brakes. Kalua testified that he was 15 to 20 feet behind plaintiff's car when he first tried to stop the truck. Previously he had noticed the car "moving slow" 30 to 35 feet ahead and had eased up on the gas; he applied the brakes when he "saw the gap being closed."

The burden was on the plaintiff to show that the defective brakes were a proximate cause of the accident. Whether a car with adequate brakes could have been stopped in time was an essential point. Irrespective of contributory negligence, the evidence was not such as to warrant a finding of proximate causation as a matter of law.

It may be that a defendant who knowingly operates a car on the highway with defective brakes should be held responsible for an accident which he would have had the

last clear chance of avoiding with adequate brakes, and in that situation should not be heard to invoke contributory negligence on the part of plaintiff. This proposition is advanced by some of the cases. See Prosser, *Comparative Negligence*, 51 Mich. L.Rev. 465, 473, note 41. But that still would leave plaintiff with the burden of proof of the facts requisite to application of the last clear chance doctrine. Annot., 159 A.L.R. 724. Thus the state of the record in respect of the ability to stop the truck with proper brakes is fatal to the contention that plaintiff's case was established as a matter of law.

The majority apparently deem the question posed by the first sentence of the foregoing paragraph not presented in this case. While this is my view, I deem it important to note the state of the record on the point. As to the refusal of plaintiff's Requested Instructions Nos. 19 and 20, I agree that this was not error in view of the form in which they were presented.

---

DISSENTING OPINION OF MIZUHA, J.

I am of the opinion that the defendant has not sustained the burden of proving contributory negligence by substantial evidence. The only evidence from which the jury could find that the plaintiff was contributorily negligent by suddenly stopping is the following testimony of Kalua, the operator of defendant's truck:

"Q Do you remember Mr. Collins asking you, 'What happend?'

"A Yes, he asked me.

"Q And what do you recall telling him?

"A I told him he came to a stop too suddenly for me to stop in time.

"Q And what else?

"A That the reason he stopped for, I thought was

because the fella was laying the traffic cone out had just finished putting up a sign, traffic sign.

"Q Did you notice any sign in the vicinity of the accident after the accident happened?

"A Yes.

"Q What kind of a sign did you notice, if anything?

"A No left turn."

There is no testimony from Kalua that plaintiff failed to make a hand signal or that plaintiff's stop lights were not working, and that the stop was without warning. Plaintiff testified that he came to a normal stop and that his stop lights were working at that time. I am unable to find anything in plaintiff's testimony from which the jury could have found or deduced that plaintiff had failed to give a hand signal of his intention to stop.[1] In fact,

[1] "MR. COREY [Plaintiff's counsel] : What did you do after the car ahead of you stopped?

"WITNESS [Plaintiff] : I came to a stop also.

"Q [By Mr. Corey] : And would you put another square, could you put another square in purple?

"THE COURT : We have a red one here.

"Q Very well. We'll use the red square for you. Where did you stop?

"A Just behind the car ahead of me.

"Q How far would you say behind that car you stopped?

"A Two or three feet.

"Q May the record show that the witness has marked with a red pencil immediately adjacent to the Kokohead prolongation of Atkinson Drive where he stopped.

"THE COURT : The record will so show.

"Q Now, after the car, strike that. How long did the car ahead of you remained [sic] stopped, if you know?

"A For a matter of seconds, about five seconds, I would say.

"Q Could it have been more or less?

"A More or less. Not less because the car had been stopped and waited two or three seconds so let's say between five and ten seconds.

"Q Very well. And then what happened after that car stopped?

"A Well, I noticed a fellow on the curb to my right with a sign in his hand.

"Q Could you see what kind of a sign it was?

"A I observed it to be a no left turn sign.

"Q How was he holding it in his hand?

"A He had the sign out into the street approximately a foot into the street. The base end of it was a maroon-colored metal base protruding about a foot into the street ahead of me about perhaps two feet in front of the right fender of my car.

"Q In which direction was the sign pointed?

the court sustained objection of defendant's counsel to the following question put to plaintiff: "Prior to coming to a stop, Mr. Collins, did you make any signals that you were about to stop?"

Kalua's statement to plaintiff, "I told him he came to a stop too suddenly for me to stop in time," is not of a

---

"A It was pointed in the direction, the base of the sign was pointed in the direction of Aloha Motors.

"Q And in which hand did he hold the sign?

"A He had the sign in both hands.

"Q And what happened after that?

"A I motioned him across because I thought that he was going to cross in front of me with the sign protruding into the street.

"Q Prior to coming to a stop, Mr. Collins, did you make any signals that you were about to stop?

"MR. CHUCK: I object to the question is being leading and suggestive, Your Honor.

"THE COURT: Objection is sustained.

"Q Would you describe the way that you came to a stop, Mr. Collins?

"A Well, it wasn't an emergency stop because I had sufficient time to observe the car ahead of me slowing down.

"Q Would you describe exactly how you made the stop?

"A It was a normal stop.

"Q Well, what did you do with your hands and your feet and so forth?

"MR. CHUCK: I object to the question as being leading and suggestive.

"Q It is not leading. Trying to get the—

"THE COURT: What did you do with your hands and feet, if anything?

"Q That is right, if anything. What did you do with your hands and feet?

"A My feet, my foot, my right foot was on my brake of my car and my left hand was on the steering wheel because I can recall making a gesture to the fellow with the sign to go ahead and cross, I believe.

"THE COURT: Can you read that back?

"(The answer of the witness was read back by the Reporter.)

"Q Was your left hand on the steering wheel before or after you stopped?

"A I don't recall.

"Q Would you take the witness stand? How fast were you going before you came to a stop, Mr. Collins?

"A I'd say approximately 15 to 20 miles an hour because I was observing the flashing red light I was approaching the intersection with caution naturally.

"Q And did you before you stopped note that anyone was, anyone in particular was behind you?

"A No, I did not.

"Q Well now, you stated that you motioned to the man with your right hand. Why did you motion with your right hand?

"A He was standing ahead of my car to my right and I can recall he

substantial character on which a jury could be permitted to return a verdict. It is clear that Kalua's statement applied to this situation where, because of his defective brakes, the stop was too sudden for him to stop in time. Kalua testified that his brakes were not working and that he had driven the truck loaded with empty bottles for miles prior to the accident with defective brakes. He was travelling about 20 to 25 miles per hour and was 30 to 35 feet behind plaintiff's car. When plaintiff's car came to a stop, he pressed down on his foot brake, but it did not hold. He does not remember reaching for the emergency hand brake, nor is there any evidence that it was used prior to the collision. There is no testimony as to any other measures taken by Kalua to avoid crashing into plaintiff's car. Kalua clearly understood why plaintiff stopped. Kalua testified "that the reason he [plaintiff] stopped for, I thought was because the fella was laying the traffic cone out had just finished putting up a sign, traffic sign." Kalua first noticed plaintiff's car when it was three car lengths ahead of him, moving slowly, which caused Kalua "to ease up on the gas." Kalua saw the man

looked at me for an indication that I would remain stopped. The sign, as I said, was protruding into the street so I assumed that he was going to cross in front of my car.

"Q And the motion you made with your right hand was for what purpose?

"A To direct him to go ahead and cross, indicating that I would remain stopped.

"Q How many seconds, if you can do this, how many seconds would you estimate approximately you remained stopped?

"A I would say approximately ten seconds.

"Q More or less?

"A That's correct. Ten seconds after I had observed the fellow indicating that he was going to cross.

"Q And then what happened?

"A Well, the next thing that I recall was a sudden impact and crashing sound and my car hurdling [*sic*] forward even though I had my foot on the power brake at the time and I can recall being thrown violently back against the seat and being thrown against the steering wheel and flying helplessly through the air and smashing my head against an object above the windshield."

laying traffic cones on the street.[2] From the testimony of Kalua, there is only one conclusion. The traffic situation prior to the collision indicates that the plaintiff was slowing down to a stop. It is apparent from Kalua's testimony that he was not and could not have been deceived by the manner in which plaintiff's car was being operated. I am unable to conclude that plaintiff's car came to a "stop too suddenly" for Kalua to stop in time. There is absolutely no testimony that plaintiff had not operated his car in a careful and prudent manner.

---

[2] "MR. COREY [Plaintiff's counsel]: How fast were you going as you approached the Kapiolani Boulevard and Atkinson Drive intersection?

"WITNESS [Kalua]: About 20 miles, 20 miles an hour.

"THE COURT: Ladies and gentlemen, are you hearing this?

"(Affirmative reply from the Jury box.)

"Q [By Mr. Corey]: Could it have been a little more than 20 miles an hour?

"A It could have been.

"Q And you were in second gear?

"A I was in second gear.

"Q All right. As you approached the Kapiolani Boulevard intersection and Atkinson Drive intersection in your truck, what, if anything, did you notice ahead of you?

"A I noticed a car.

"Q A car?

"A That's right.

"Q Did you notice any other, any other things ahead of you other than a car? You say you noticed some cones?

"A Yes.

"Q Did you notice any persons connected with those cones in any way?

"A Not at that time.

"Q Not at that time. Very well. The car that you noted ahead of you, how far was that car ahead of you at that time when you first noticed it?

"A I would say three car lengths.

"Q Three car or three truck lengths?

"A Three car lengths.

"Q Three car——

"A Thirty, thirty-five feet.

"Q I see. And was the car, the first time you noticed it, was the car moving?

"A Yes, it was.

"Q Was it going fast or slow?

"A It was slow.

"Q And what, if anything, did you do when you first noticed that car ahead of you?

But assuming that the jury believed Kalua that plaintiff did stop suddenly without a signal of his intention to stop, this in itself does not establish contributory negligence in the absence of other evidence to show a direct causal connection between the sudden stop and the collision, and that the sudden stop was the proximate cause of the collision and plaintiff's injury. See *Grace* v. *Kumalaa,* 47 Haw. 281, 285, 386 P.2d 872, 876; *Mitchell* v. *Branch,* 45 Haw. 128, 131, 363 P.2d 969, 973; *Dzurik* v. *Tamura,* 44 Haw. 327, 329, 359 P.2d 164, 165; *Fuller* v. *Honolulu Rapid Transit & Land Co.,* 16 Haw. 1, 9-10. "The very essence of contributory negligence is a want of ordinary care on the part of the plaintiff which is a proximate cause, an occasion, of the injury; not only must the negligence of one injured by the culpable negligence of another contribute to the injury, but it must contribute as a proximate cause, and not as a remote cause." *Fulton* v. *Chouteau County Farmers' Co.,* 98 Mont. 48, 67, 37 P.2d 1025, 1031. Defendant has the burden of proof as to contributory negligence. *Grace* v. *Kumalaa, supra* at 287, 386 P.2d at 877; *Anduha* v. *County of Maui,* 30 Haw. 44, 50.

Modern highway driving requires frequent sudden stops. The mere fact that there was a sudden stop is not negligence. Kalua's statement that defendant stopped sud-

"A When I first noticed him moving slow, I eased up on the gas.
"Q In order to stop or slow down?
"A No, just to, not to pick up any more speed.
"Q And then what?
"A Then I saw the gap being closed, I mean I was pulling right up to him so I applied my brakes or what was left of it.
"Q Do you remember your brakes skipping at that point?
"A Yes, it did.
"Q Did they skip partially or all the way down to the bottom?
"A I can't say exactly.
"Q Did they hold?
"A No, they didn't.
"Q You remember reaching down for the emergency brake?
"A No, I didn't.
"Q Do you remember the car ahead of you coming to a stop?
"A Yes."

denly is merely a legal conclusion, not a factual basis for a finding of negligence. What would constitute a stop without adequate warning might be one thing where there was no reason for drivers of following vehicles to anticipate a stop and something quite different where there was every reason to suppose that a person laying out traffic cones and a sign would require all vehicles moving in a stream of traffic to come to a halt. See *Caraway* v. *Behrendt*, 224 S.W.2d 512 (Tex. Civ. App.); *Shaw* v. *Malone*, 55 York Leg. Rec. 150; *Vienne* v. *Chalona*, 28 So. 2d 154 (La. App.); *Schlue* v. *Missouri Pacific Transp. Co.*, 62 S.W.2d 934 (Mo. App.); *Cole* v. *Phephles*, 241 Wis. 155, 5 N.W.2d 755.

In order for the defendant to avoid liability, he must establish by a preponderance of the evidence, the causal connection between plaintiff's negligence and the collision. The mere inference that plaintiff's vehicle came to a sudden stop without warning is not in itself sufficient to establish this necessary causal relationship. Proximate cause must be proved and is never presumed. *Dzurik* v. *Tamura, supra.* There is no evidence in the record, not even a scintilla, to show that the sudden stop without warning was the proximate cause of the collision. All we have is the statement of defendant that he was travelling about three car lengths to the rear of plaintiff and was slowing down. But defendant has to prove by substantial evidence that at this distance and speed it was impossible to avoid this accident or to stop in time, even if he had good brakes. This is the criteria by which proximate causation will be judged from the facts of this case. The test as to contributory negligence on the part of the plaintiff under the circumstances is whether he acted as an ordinarily prudent man in stopping his vehicle. Reasonable care does not require the plaintiff to anticipate that the truck following him in the rear will be unable to stop

because of defective brakes, when ordinarily, the rear driver would have plenty of time and space within which to avoid the collision.

It would be the same as to burden of proof on contributory negligence, if defendant had sued plaintiff for negligence on the theory that plaintiff had made a sudden stop without warning. Then, if the plaintiff asserts as an affirmative defense that defendant was contributorily negligent because of defective brakes, plaintiff has the burden of proving that the defective brakes were the proximate cause of the collision. In order to show this causal connection, plaintiff must offer evidence:

(1) That the truck had defective brakes, and

(2) That at the speed and distance maintained between vehicles, the operator could have stopped his truck in time to avoid the collision with normal brakes.

The majority opinion fails to consider the negligence of the defendant and its legal consequence in this particular situation. Rear-end collisions resulting from the operation of a vehicle with defective brakes must be viewed differently from ordinary cases where the rear car is equipped with normal working brakes.

Furthermore, assuming there was contributory negligence, the principle enunciated in *British Columbia Electric Ry.* v. *Loach,* L.R., 1 A.C. 719 (1916) is applicable here. Contributory negligence of the plaintiff will not disentitle him to recover damages if the defendant, by the exercise of due care, might have avoided the result of the negligence. It applies when the defendant, although not committing any negligent act subsequent to the plaintiff's negligence, has incapacitated himself by his previous negligence from exercising such care as would have avoided the result of plaintiff's negligence. See *Little Rock Traction & Electric Co.* v. *Morrison,* 69 Ark. 289, 62 S.W. 1045.

Under this rule, a defendant who knowingly operates a vehicle on our public highways with defective brakes has the burden of producing substantial evidence, that subsequent to the contributory negligence of the plaintiff, the collision could not have been avoided by the exercise of due care. Adoption of this rule of law would discourage motorists from continuing to operate vehicles with defective brakes. Statements that the other vehicle stopped or turned suddenly without warning would be insufficient to find the necessary causation to establish contributory negligence on the part of the plaintiff to defeat recovery.

I do not agree with the concurring opinion which concludes that the plaintiff failed to show as a matter of law that the defective brakes were a proximate cause of the accident. Kalua admitted to the police officer that "I hit the other car because of my brakes." Kalua testified that he was travelling about 20 to 25 miles an hour when he first noticed the plaintiff's car in front of him, and was about three car lengths—thirty-five feet behind. It was moving slowly, and he (Kalua) "eased up on the gas." Kalua further testified that when he saw "the gap being closed, I mean I was pulling right up to him so I applied my brakes or what was left of it." In response to the question, "Did they [brakes] hold?" Kalua answered, "No, they didn't." In the light of Kalua's testimony as stated in the concurring opinion that "a normal stop at the speed of 20 to 25 miles an hour with the truck loaded as it was that day, would require 25 to 30 feet to stop the truck with good brakes," and he permitted the gap between vehicles to close to "15 to 20 feet" before he first tried to stop the truck, I am at a loss as to what is required by way of proof to show that the defective brakes were the proximate cause of the accident.

It is not contended in this dissent that a defendant who operates a vehicle with defective brakes may be held

responsible for an accident on the last clear chance doctrine, and in that "situation should not be heard to invoke contributory negligence on the part of the plaintiff." The case was not tried on such a theory by plaintiff. Since one of the defenses defendant asserted was contributory negligence, defendant must prove the causal relationship —that the stop was the proximate cause of the accident. In order to do this, defendant must prove that at the distance and speed Kalua was travelling, he had no chance to stop after the necessity of stopping became apparent to him, even with good brakes. Kalua testified that a normal stop at the speed of 20 to 25 miles an hour with a truck loaded as it was that day, would require 25 to 30 feet to stop the truck with good brakes. He also testified that he was travelling 20 to 25 miles an hour. He was about 35 feet behind plaintiff's car, when he "eased up on the gas" since plaintiff's car was slowing down. He did not testify as to his speed at the time he tried to stop his truck when he was 15 to 20 feet behind plaintiff's car, but it is logical to assume that at that particular time it was considerably less than his speed of 20 to 25 miles an hour, since he had "eased up on the gas" and his truck was in "second gear." When Kalua's statements are compared with his testimony as to the stopping distance for his truck with good brakes, there is only one conclusion; that had he good brakes, he could have stopped his truck in time to avoid the accident. Instead of it being evidence of contributory negligence, Kalua's statements prove otherwise. It clearly shows that the stop was not the proximate cause of the collision.

I would reverse and remand for a new trial inasmuch as plaintiff did not move for judgment notwithstanding the verdict.